## VIRGINIAN RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. May 4, 1915.)

### No. 1287.

RAILROADS ⬤⟞229—SAFETY APPLIANCE ACT—CONSTRUCTION.

The intention of Congress in enacting Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531, as amended (Comp. St. 1913, §§ 8605–8650), making it unlawful for any interstate carrier by railroad to use on its line any locomotive engine not equipped with a power driving wheel brake and appliances for operating the train brake system, is to require the control of trains in ordinary line movement by the train brakes prescribed, and to make unlawful the use of hand brakes for that purpose, and the act is mandatory and absolute, and a railroad company, which cannot move an interstate train of 100 cars at a slow speed and keep the same under control with the use of the prescribed power brake only, but which can operate trains of fewer cars with safety without the use of hand brakes, cannot justify the use of hand brakes on trains of 100 cars.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. ⬤⟞229.

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

In Error to the District Court of the United States for the Western District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

Action by the United States against the Virginian Railway Company. Judgment for the United States, and defendant brings error. Affirmed.

H. T. Hall, of Roanoke, Va., and G. A. Wingfield, of Norfolk, Va., for plaintiff in error.

Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C. (R. E. Byrd, U. S. Atty., of Richmond, Va., on the brief), for the United States.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

---

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KNAPP, Circuit Judge. The writ of error in this case seeks to reverse a judgment obtained by the United States in an action, tried by the court without a jury, to recover penalties for alleged violations of the Safety Appliance Laws, so called. The violations in question are predicated upon the use of hand brakes, which is claimed to be forbidden, in the operation of certain trains on a section of defendant's road, and it is conceded that hand brakes were used, in the manner and to the extent hereinafter described, on the occasions specified in the government's declaration. The undisputed facts which are deemed material may be summarized as follows:

The Virginian Railway was constructed primarily for the transportation of coal at low cost from the mining districts of West Virginia to a tidewater terminal near the city of Norfolk, Va., and unusual expense was incurred to secure favorable grades and other conditions which would permit the hauling of this traffic in trains of great length. It appears to be a common practice to operate trains of 100 cars, each carrying approximately 54 tons. These trains are said to exceed in tonnage, if not in number of cars, the trains in ordinary use on any other road in the country.

The section of track on which the alleged violations occurred, in July, 1912, extends from Goodview to Huddleston, in the state of Virginia, a distance of about 13 miles. It has throughout a descending grade to the east, which is the direction of the loaded movement, varying from nearly level to a maximum of 31.68 feet per mile, with heavy cuts and fills and numerous curves. At the time mentioned the roadbed was not firmly settled, and more or less trouble was experienced from the unstable condition of the fills and the sliding of earth and rocks in the cuts. On this account trains were limited by order to a speed of 5 miles an hour at one point and 10 miles an hour at other points. It was found, however, that these very long trains could not be operated safely, at the slow rate of speed required on this grade, when air brakes only were used for their control. This was because air brakes could not be applied with needed effect, if at all, without exerting a pressure which would stop the train, or, if released before the train came to a standstill, would cause such a jerking and surging of the train as to break the cars apart, and accidents of this kind were of frequent occurrence. To avoid this danger the company decided upon the use of hand brakes, and accordingly, in May, 1912, promulgated the following order:

"In order to avoid breaking knuckles, pins, and couplers in east-bound 100-car trains coming down the six-tenths grade between Goodview Tunnel and Huddleston, these trains will be held with hand brakes and the independent engine brake.

"As a general proposition hand brakes should be set about as follows: Goodview Tunnel to Westgate, 15 brakes; Westgate to Moneta, about 5 brakes; Moneta to Huddleston, about 20 brakes.

"If these brakes do not hold the train sufficiently, additional hand brakes will be set up, or the independent engine brake used.

"The automatic air brakes will be used if it is seen that the hand brakes are not holding properly, to make a quick stop on account of being flagged, or in other cases of emergency."

Referring to the two trains described in the declaration, it is sufficient to say, without specifying when hand brakes were applied or released, or how many were used, that they were operated under this order and substantially according to its requirements. In a stipulation between the parties introduced in evidence the following facts were admitted:

"The engines on each of said trains were equipped with a power driving wheel brake, and appliances for operating the train brake system, and all of the cars in each of said trains were equipped with power or train brakes, so that the engineer on each of said engines could control the speed of the trains without requiring brakemen to use a common hand brake for the purpose. All of said cars in each of said trains were also equipped with hand brakes."

It appears to be conceded by defendant, and the fact is clearly established by the testimony, that trains of a smaller number of cars could be safely operated on this section of road, even at the slow rate of speed stated, by using only the air brakes and the locomotive power brake. Just how many cars could be handled without the use of hand brakes is not altogether certain, but apparently there was no difficulty with trains of 50 cars, or even more than that number. In short, the alleged necessity for requiring hand brakes to be used resulted wholly from the extreme length of the trains, coupled with the low rate of speed at which they were moved. Shorter trains could be operated with entire safety, as respects control of speed and otherwise, without the aid of hand brakes.

The situation, then, was this: All the appliances contemplated by the statute were fully provided, were of proper construction, and in good working order. Trains of say 50 cars, probably more, could be safely operated without the aid of hand brakes; but for trains of greater length, certainly for those of 80 to 100 cars, it was necessary, in order to avoid the risk of accident, to make use of hand brakes as provided in the quoted order. Was the use of hand brakes under such circumstances a violation of the federal statute?

The original act, approved March 2, 1893, provides as follows:

"That from and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving wheel brake and appliances for operating the train-brake system, or to run any train in such traffic after said date that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose."

The sixth section, as amended in 1896 (Act April 1, 1896, c. 87, 29 Stat. 85), contains the following:

"That any such common carrier using any locomotive engine, running any train, or hauling or permitting to be hauled or used on its line any car in violation of any of the provisions of this act, shall be liable to a penalty of one hundred dollars for each and every such violation," etc.

The later amendment of 1903 (Act March 2, 1903, c. 976, § 2, 32 Stat. 943), includes this provision:

"That whenever, as provided in said act, any train is operated with power or train brakes, not less than fifty per centum of the cars in such train

shall have their brakes used and operated by the engineer of the locomotive drawing such train; and all power-braked cars in such train which are associated together with said fifty per centum shall have their brakes so used and operated," etc.

The question asked above must be answered in the affirmative. In our judgment the legislation here considered manifests the plain intention of Congress to require the control of trains in ordinary line movement by the train brakes prescribed, and to make unlawful the use of hand brakes for that purpose. True, the use of hand brakes is not in express terms prohibited; but this is the necessary implication of the language used, and it admits of no other reasonable construction. It was the evident purpose of the train brake provision to prevent the danger resulting from the operation of hand brakes on the tops of cars in moving trains. Just as the object of the automatic coupler is to keep employés from going between cars, so the object of the train brake is to keep employés from going on top of cars to set and release the hand brakes. The purpose of the law is the guide to its interpretation, as the courts have repeatedly said. For example, in Erie R. R. Co. v. U. S., 197 Fed. 287, 116 C. C. A. 649, where it was held that the train brake requirement does not apply to switching movements in railroad yards, the court took occasion to say of the act:

"Its purpose was to compel railroads to equip trains in interstate transit with air brakes, thereby contributing not only to the safety of passengers and crews, but saving brakemen, so far as possible, from the dangers incurred in manipulating hand brakes."

The whole argument of plaintiff in error rests upon the proposition that, since the statute requires that all cars be equipped with hand brakes, and does not expressly forbid their use for controlling the speed of trains, there is left to—

"the judgment or discretion of the men operating the trains the decision as to when and under what circumstances the power brake should be used, and as to when and under what circumstances the hand brake should be used."

The proposition is also stated in this form:

"The object of Congress was evidently that the automatic power brakes should be used to control the speed of the train at all times when good railroad practice would require the use of such brakes, and to permit the use of hand brakes under such circumstances as, in the judgment of the people in charge of the operation of the trains, would promote the safety of the operation."

It is obvious that such a construction would practically nullify the train brake requirement, and take all effective meaning from the provision which makes it unlawful to run "any train" unless the locomotive and cars are so equipped that the engineer can control its speed "without requiring the brakeman to use the common hand brake for that purpose." The contention must be rejected as clearly unsound. It is impossible to believe that the Congress compelled the equipment of locomotives and cars with the appliances specified in the act, for the declared purpose of doing away with the dangerous operation of hand brakes, and then left it to the carriers themselves

to decide when and under what circumstances those appliances should be used.

On the contrary, we deem it beyond doubt that the duty imposed by the provision here considered is mandatory and absolute. There is no express or implied qualification, which in any way relates to the question at issue, and it is not for the courts to introduce an exception which the Congress did not see fit to make. The peculiar and unusual conditions which existed on this section of defendant's road cannot be permitted to excuse an avoidance of the positive requirements of the act. Moreover, those conditions disclose no emergency or extraordinary difficulty. They simply show that the defendant, for the sake of convenience or economy, deliberately ordered the use of hand brakes in the daily and customary operation of its trains.

The justification set up is that trains of 100 cars cannot be moved on this stretch of track, at the slow speed of 10 miles an hour or less, and kept under safe control with the use only of the prescribed power brake. But those operating conditions, which occasioned the need of hand brakes, are evidently of defendant's own creation. All it has to do to comply with the law is to make up trains of such smaller number of cars as can be safely and properly handled without resorting to the use of hand brakes. In short, the mandate of the Congress is disregarded in this instance, not because compliance involves any physical difficulty which is inherent or practically serious, but merely because it involves some increase of expense. It is too plain for argument that no such reason can serve to condone disobedience to the command of the statute. As is said in U. S. v. Pere Marquette R. R. Co. (D. C.) 211 Fed. 220, with reference to the first section of the original act:

"It must be construed in connection with the other sections of the same statute, and particularly in connection with, and with reference to, the modifying and explanatory act of March 2, 1903. In and by the latter act Congress has removed whatever doubt, uncertainty, or ambiguity existed in the former one, and has said plainly and unequivocally that the provisions and requirements of the earlier act 'shall be held to apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce.' The legislative intent so plainly expressed must be respected. The beneficial and remedial purposes of these statutes must not be defeated by strained construction, and must not be made subordinate to either convenience or economy of railroad operation."

It is sufficient to add that the views herein briefly expressed are supported by numerous decisions construing the analogous language of other sections of the Safety Appliance Law. U. S. v. Colorado N. W. R. Co., 157 Fed. 321, 85 C. C. A. 27, 15 L. R. A. (N. S.) 167, 13 Ann. Cas. 893; Atlantic Coast Line v. U. S., 168 Fed. 175, 94 C. C. A. 35; Atchison, T. & S. F. Ry. Co. v. U. S., 198 Fed. 637, 117 C. C. A. 341; Delk v. St. Louis & San Francisco R. Co., 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590; Southern Ry. Co. v. U. S., 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72.

We are of opinion that the case was correctly decided in the court below, and the judgment will therefore be affirmed.