UNITED STATES v. GREAT NORTHERN RY. CO.

(Circuit Court of Appeals, Ninth Circuit. February 14, 1916.)

No. 2636.

1. RAILROADS ⊙�longrightarrow229—STATUTORY REGULATIONS—EQUIPMENT OF TRAINS.

Act March 2, 1893, c. 196, 27 Stat. 531 (Comp. St. 1913, §§ 8605–8612), provides that it shall be unlawful for any carrier engaged in interstate commerce by railroad to use any locomotive not equipped with a power driving wheel brake and appliances for operating the train brake system, or to run any train not so equipped with power or train brakes that the engineer can control its speed without requiring brakemen to use the common hand brake for that purpose. The amendatory act of April 1, 1896 (29 Stat. 85, c. 87 [Comp. St. 1913, § 8610]), imposes a penalty for violations. and Act March 2, 1903, c. 976, § 2, 32 Stat. 943 (Comp. St. 1913. § 8614), provides that, whenever any train is operated with power or train brakes, not less than 50 per cent. of the cars shall have their brakes operated by the engineer. Act April 14, 1910, c. 160, § 2, 36 Stat. 298 (Comp. St. 1913, § 8618), provides that all cars must be equipped with efficient hand brakes. *Held*, that it is unlawful to permit the use of hand brakes in connection with the power brakes required by the statute, though the engine and the required percentage of cars are properly equipped, as the title of the original act and the reports of congressional committees, as well as the language of the act, shows that it was intended to make it unlawful to require brakemen to use hand brakes, and the hand brakes required by the act of 1910 are intended to control cars in yards and elsewhere, when trains have been broken up, or are being made up.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. ⊙�longrightarrow229.]

2. RAILROADS ⊙�longrightarrow254—STATUTORY REGULATIONS—PENALTIES—CONSTRUCTION OF STATUTE.

In a civil action to recover a penalty, the Safety Appliance Acts are not to be construed by the rules which govern the construction of criminal statutes.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 764–772; Dec. Dig. ⊙�longrightarrow254.]

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Action for statutory penalties by the United States against the Great Northern Railway Company. Judgment for defendant on demurrer, and the United States brings error. Reversed and remanded.

Francis A. Garrecht, U. S. Atty., of Spokane, Wash., and Philip J. Doherty and M. C. List, Sp. Asst. U. S. Attys., both of Washington, D. C.

Charles S. Albert and Thomas Balmer, both of Spokane, Wash., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. [1] An action consisting of 12 counts was brought against the defendant in error to recover penalties for

violations of the Safety Appliance Act approved March 2, 1893, c. 196, 27 Stat. 531, as amended by Act April 1, 1896, c. 87, 29 Stat. 85, and by Act March 2, 1903, c. 976, 32 Stat. 943. It was alleged that the defendant ran on its line of railroad, in interstate commerce, certain freight trains drawn by its own locomotive engines, but that at times the speed of the trains was controlled by brakemen who were required to use common hand brakes for that purpose. There was a stipulation between the parties that each engine was equipped with a power driving wheel brake and appliances for operating a train brake system; that in each train not less than 85 per cent. of the cars therein were equipped with power or train brakes, which were used and operated by the engineer of the locomotive drawing such train to control its speed, in connection with the hand brakes. The court below sustained a demurrer to the complaint, on the ground that none of the counts therein set forth facts sufficient to constitute an offense against the United States.

The statute of March 2, 1893, provides:

"That from and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving wheel brake and appliances for operating the train brake system, or to run any train in such traffic after said date that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose."

The amendment of April 1, 1896, imposes a penalty upon any such common carrier—

"using any locomotive engine, running any train, or hauling or permitting to be hauled or used on its line any car in violation of any of the provisions of this act."

The amendment of March 2, 1903, provides (section 2):

"That whenever, as provided in said act, any train is operated with power or train brakes, not less than fifty per centum of the cars in such train shall have their brakes used and operated by the engineer of the locomotive drawing such train; and all power braked cars in such train which are associated together with said fifty per centum shall have their brakes so used and operated."

The act gave the Interstate Commerce Commission authority from time to time to increase the minimum percentage of cars in any train required to be operated with power, or train brakes, and at the time of the acts complained of the percentage of cars required to have their brakes used and operated by the engineer of the locomotive drawing the train had been increased to 85.

The court below construed the acts and amendments thereto as permitting the use of hand brakes in connection with the specific power brakes referred to in the act. The plaintiff assigns error to that construction, and contends that it was the intention of the act to require that the movement of all such trains must be controlled by power brakes, and that no brakeman should be required to use hand brakes. We have carefully considered the questions involved, and have reached these conclusions:

First. Aside from the language of the act and the amendments, there is external evidence that it was the intention of Congress thereby to make it unlawful to require brakemen to use hand brakes in the ordinary management and movement of freight trains in interstate commerce. This is shown by the title of the act and the reports of committees during the passage of the bill through Congress. The title of the act is:

"An act to promote the safety of employés and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers and continuous brakes and their locomotives with driving wheel brakes, and for other purposes."

The House Committee on Interstate Commerce, in its report on the bill, after referring to the number of train hands killed in falling from trains and engines, said:

"It is the judgment of this committee that all cars and locomotives should be equipped with automatic couplers, obviating the necessity of men going between the cars, and continuous train brakes that can be operated from the locomotive, and dispense with the use of men on the tops of the cars; that the locomotive should be provided with power driving wheel brakes, rendering them easy of control. The brakes now have to be largely operated by the brakemen, traveling over the tops of the cars by night and day, through sleet and rain, exposed to great danger of falling from the cars, or from overhead obstructions."

The chairman of the committee which had charge of the bill in the Senate explained the bill by saying:

"When we get the cars of this country equipped with uniform couplers, with air brakes, so that the men will not be required to go between the cars, so that the men who are on top of the cars to-day will be taken off and thereby relieved from the danger of such positions, there will be no cause for any further legislation on the subject, in my judgment."

The Interstate Commerce Commission also so understood the act. In its Eleventh Annual Report it said:

"The requirement, therefore, is not that a carrier shall equip its cars with the brake or the coupler, but that it shall not use in interstate traffic a train which is not controlled by the train brake."

In its Thirteenth Annual Report the Commission, anticipating the time when the law should go into effect, said:

"The men will not then be obliged to use the tops of the cars for braking, nor to walk on the running boards. The freight train will be as completely under control of the engineer as passenger trains are at the present time."

Second. The act by its terms expresses with sufficient certainty the intention of Congress that hand brakes shall not be used on freight trains in the ordinary movement of such trains in interstate commerce. By the act Congress adopted for freight trains the system of braking that was in use on passenger trains. It made no specific mention of the number of cars in a train that should be equipped with power brakes, but it enacted in general terms that the train should be sufficiently equipped to be run without requiring the use of the common hand brake. The clause "without requiring brakemen to use the common hand brake," as found in the first section of the act, is used in the same sense as the words "without the necessity of men

going between the ends of the cars," in the second section, which provides for automatic couplers. The language of the act was equivalent to declaring that after the date named freight trains should not only be equipped to run, but should actually be run without requiring brakemen to use the common hand brake. No implication to the contrary is to be found in the provision in section 2 that all cars must be equipped with "efficient hand brakes," a provision which is ascribable to the necessity of controlling the movement of cars in yards and elsewhere, when trains have been broken up or are being made up. In an act, the express purpose of which is to relieve brakemen from the danger of using hand brakes, a provision that the train shall be so equipped as to run without requiring the use of hand brakes is a prohibition against the use of hand brakes in the ordinary movement of the trains. In view of the protection which was intended to be afforded by the act, it would have been idle for Congress to declare that freight trains must be equipped with appliances to operate a power brake system, and at the same time leave it optional with a railroad company to decide whether it would or would not operate its trains with that system. To say that trains shall be provided with power brakes, and in the same breath to say that the carrier may refuse to use them, is to contradict the very purpose and terms of the act. Yet such is the effect of the law, if it be given the construction contended for by the defendant in error.

[2] The act is not to be construed by the rules which govern the construction of criminal statutes. The action is a civil action to recover a penalty. The Supreme Court has held that, if the language of a penal statute is plain, it will be construed as it reads, and that the words will be given their full meaning, and, if ambiguous, the court will lean more strongly in favor of the defendant than it would if the statute were remedial in its nature. Bolles v. Outing Co., 175 U. S. 262, 20 Sup. Ct. 94, 44 L. Ed. 156; Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363. In the case last cited, the court quoted with approval the language of Mr. Justice Story in United States v. Winn, 3 Sumn. 209, Fed. Cas. No. 16,740, as follows:

"I agree to that rule in its true and sober sense; that is, that penal statutes are not to be enlarged by implication, or extended to cases not obviously within their words and purport. * * * And where a word is used in a statute, which has various known significations, I know of no rule that requires the court to adopt one in preference to another, simply because it is more restrained, if the objects of the statute equally apply to the largest and broadest sense of the word. In short, it appears to me that the proper course in all these cases is to search out and follow the true intent of the Legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the Legislature."

The only reported case which supports the decision of the court below is United States v. Baltimore & O. R. Co. (D. C.) 176 Fed. 114, in which it was held that the law is complied with so long as it is shown that trains contain the required percentage of cars equipped with power brakes. The order of nonsuit in that case was affirmed

by the Circuit Court of Appeals for the Third Circuit in United States v. Baltimore & O. R. Co., 185 Fed. 486, 107 C. C. A. 586, but that court declined to express an opinion, as to the construction placed on the statutes by the District Court. On the other hand, in Virginian Ry. Co. v. United States, 223 Fed. 748, 139 C. C. A. 278, the Circuit Court of Appeals for the Fourth Circuit, in a carefully considered opinion, reached the opposite conclusion. The court said:

"It is impossible to believe that the Congress compelled the equipment of locomotives and cars with the appliances specified in the act for the declared purpose of doing away with the dangerous operation of hand brakes, and then left it to the carriers themselves to decide when and under what circumstances those appliances should be used."

The judgment is reversed, and the cause is remanded to the court below for further proceedings.

ROSS, Circuit Judge (dissenting). The sufficiency of the complaint in this case is to be considered in the light of this stipulation entered into by and between the respective parties:

"It is stipulated that, in consideration of the demurrer to each of the causes of action herein in this court or in any appellate proceedings, it may be accepted as a fact as to each of said causes of action that each engine was equipped with a power driving wheel brake and appliances for operating a train brake system, and that in each train not less than 85 per cent. of the cars therein were equipped with power or train brakes, which were used and operated by the engineer of the locomotive drawing such train, to control its speed in connection with the hand brakes.
"Dated this 14th day of June, 1915.
"[Signed]    Francis A. Garrecht,
"M. C. List,
"Attorneys for Plaintiff.
"Charles S. Albert,
"Thomas Balmer,
"Attorneys for Defendant."

The facts of the case therefore are that, as to each of the causes of action counted on, each engine was not only equipped with a power driving wheel brake and appliances for operating a train brake system, and that in each train not less than 85 per cent. of the cars therein were equipped with power brakes, but that 'they were used and operated by the engineer of the locomotive drawing such train to control its speed in connection with the hand brakes. The sole question, therefore, in the case, is not whether Congress should have under such circumstances prohibited the use of any hand brakes, but whether it has done so by its legislation upon the subject. That it has not done so seems to me very plain from a mere reading of its enactments. That of March 2, 1893, referred to in the opinion of the court, declares:

"That from and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving wheel brake and appliances for operating the train brake system, or to run any train in such traffic after said date that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train

can control its speed without requiring brakemen to use the common hand brake for that purpose."

It will be observed that in that act Congress did not specify the number of cars that should be equipped with the train brake system, only requiring that the number should be "sufficient" for the purpose designed. But by its amendment of March 2, 1903, also referred to in the opinion, Congress declared:

"That whenever, as provided in said act, any train is operated with power or train brakes, not less than fifty per centum of the cars in such train shall have their brakes used and operated by the engineer of the locomotive drawing such train; and all power brake cars in such train which are associated together with said fifty per centum shall have their brakes so used, and operated; and, to more fully carry into effect the object of said act, the Interstate Commerce Commission may, from time to time, after full hearing, increase the minimum percentage of cars in any train required to be operated with power or train brakes which must have their brakes used and operated as aforesaid; and failure to comply with any such requirement of the said Interstate Commerce Commission shall be subject to the like penalty as failure to comply with any requirement of this section."

Pursuant to the power thus delegated to it, the Interstate Commerce Commission, on the 6th day of June, 1910, promulgated this order:

"It is ordered, that on and after September 1, 1910, on all railroads used in interstate commerce, whenever, as required by the Safety Appliance Acts as amended March 2, 1903, any train is operated with power or train brakes, not less than 85 per cent. of the cars of such train shall have their brakes used and operated by the engineer of the locomotive drawing such train, and all power brake cars in each such train which are associated together with the 85 per cent. shall have their brakes so used and operated."

It is thus seen that at first Congress only required a "sufficient" number of the cars of a train to be equipped with the power brake system, without specifying the number, then by amendment fixed that number at not less than 50 per centum and gave to the Interstate Commerce Commission power to increase that number, after a full hearing before it, to the extent it should deem wise. There is in no act of Congress that has been cited any provision prohibiting the equipment of the cars with hand brakes also; on the contrary, by section 2 of its act of April 14, 1910, c. 160 (36 Stat. 298), Congress expressly provided, among other things, that "all cars must be equipped with secure sill steps and efficient hand brakes," with a certain proviso not important to be here mentioned.

There is certainly nothing in the above-quoted provisions of the statute either expressly or in my opinion by implication prohibiting the use of hand brakes in connection with the power brake system, and the facts of the present case as made to appear by the record are that the full percentage of the cars constituting the trains in question, required by the Interstate Commerce Commission pursuant to its legislative authority to be equipped with the power brake system, were so equipped, and that the trains in question were operated thereby. For the court to hold that a larger percentage of the cars of the trains should have been equipped with and operated by the power brake system would be for it to assume the function devolved by Congress upon the Interstate Commerce Commission, which, of course, it has no power to do.

The case of Virginian Railway Co. v. United States, 223 Fed. 748, 139 C. C. A. 278, quoted in the opinion as sustaining the conclusion of the court, does not, I think, in any respect do so. The trains there under consideration consisted of 100 cars each, each of which was equipped with power brakes and also with hand brakes, and the driving wheels of the engines were also properly equipped; nevertheless, upon each of those trains the power brakes were not used at all, but, on the contrary, the trains were controlled solely by the use of the hand brakes, which the court very properly held was a clear violation of the act of Congress.

In my opinion, the judgment of the court below should be affirmed.