### GREAT NORTHERN RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. June 25, 1917.)

No. 2836.

1. COMMERCE ☞5—CONSTITUTIONAL LAW ☞301—SAFETY APPLIANCE ACTS—VALIDITY.

Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531, as amended by Act April 1, 1896, c. 87, 29 Stat. 85, Act March 2, 1903, c. 976, 32 Stat. 943 (Comp. St. 1916, §§ 8605–8615), and Act April 14, 1910, c. 160, 36 Stat. 298, being fairly within the scope of a regulation of commerce among the states, its validity is not impaired by the due process clause of the Fifth Amendment to the Constitution.

2. PLEADING ☞127(2)—ADMISSIONS—CONSTRUCTION OF PLEADING.

In an action against a railway company for violations of the Safety Appliance Acts, in which the complaint alleged that the railway company ran its trains in interstate commerce when the speed of the trains was controlled by brakemen using the common hand brake, and when brake-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

men were required to use such brake to control the speed of the train, and when the speed of the train was not controlled by power or train brakes used and operated by the engineer, an answer alleging that each engine was equipped with a powerful driving wheel brake and appliances for operating the train brake system, and that in each train not less than 85 per cent. of the cars were equipped with power or train brakes, which were operated by the engineer of the locomotive to control the speed of the train in connection with the hand brakes, did not deny, but, on the contrary, admitted, that the speed was to some extent controlled by brakemen using hand brakes, and was insufficient.

3. PLEADING ⟐8(6)—CONCLUSIONS—DENIAL OF VIOLATION OF LAW.

In a suit against a railway company for penalties for violations of the Safety Appliance Acts, a specific denial that the statute was violated by defendant was but a conclusion of the pleader, to be disregarded where the specific averments of the answer did not deny the material averments of the complaint.

4. RAILROADS ⟐229—EQUIPMENT OF TRAINS—BRAKES.

The Safety Appliance Acts are mandatory in requiring that trains must not only be equipped to run, but must actually be run, without requiring brakemen to use the hand brakes in the ordinary movement of the trains.

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Suit for penalties by the United States against the Great Northern Railway Company. Judgment for the United States, and defendant brings error. Affirmed.

Charles S. Albert and Thomas Balmer, both of Spokane, Wash., for plaintiff in error.

Francis A. Garrecht, U. S. Atty., of Spokane, Wash., and Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. This case for a second time comes before the court. It is a prosecution in 12 counts, brought to recover penalties against the railway company for violation of Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531, as amended by Act April 1. 1896, c. 87, 29 Stat. 85, Act March 2, 1903, c. 976, 32 Stat. 943, and Act April 14, 1910, 36 Stat. 298. Examination of the case as reported in U. S. v. Great Northern R. Co:, 229 Fed. 927, 144 C. C. A. 209, and of the complaint herein, shows that the material allegations of the complaint are that the railway company ran its trains in interstate commerce when the speed of the train was controlled by the brakemen using the common hand brake for that purpose, and when the railway company required the brakemen to use the common hand brake to control the speed of the train, and when the speed of the train was not controlled by the power or train brakes used and operated by the engineer of the locomotive drawing the train.

Upon the first hearing before the District Court, demurrer to the complaint was sustained, and judgment went in favor of the railway

company. But this court reversed that judgment, and after remand the company answered in material part as follows:

"Said defendant further alleges that each engine upon each of said trains was equipped with a powerful driving wheel brake and appliances for operating the train brake system, and that in each train not less than 85 per cent. of the cars therein were equipped with power or train brakes, which were used and operated by the engineer of the locomotive drawing such train, to control its speed in connection with the hand brakes. Said defendant specifically denies that the act of Congress mentioned in the complaint herein as amended was violated by the said defendant," etc.

The United States by its counsel moved for judgment on the pleadings and against objection by the railroad company the motion was granted. The railway company contends that to allow recovery would be to deprive it of its property without due process of law, and would be violative of article 5 and section 1 of article 14 of the Amendments to the Constitution.

[1] We cannot sustain this view. The obvious purpose of the statute being to protect men employed upon trains in the movement of interstate commerce, the power of Congress may be fully exerted in the premises, and, the statute being fairly within the scope of the regulation of commerce among the states, in our opinion its validity is not impaired by the due process clause of the Fifth Amendment to the Constitution. Southern Railway Co. v. United States, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72; Second Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44.

[2, 3] It is said that the court erred in granting judgment upon the pleadings because the allegations of the complaint are denied, and the averments of facts embodied in the portion of the answer as heretofore quoted must be construed most favorably to the defendant. The argument made on this point would have us conclude that the sole effect of the answer interposed is that the train was properly equipped with power driving wheel brakes and appliances, and that at least 85 per cent. of the cars were equipped with power or train brakes; that these were used and operated by the engineers to control the speed of the trains in connection with the hand brakes; that there is no admission in the pleading that brakemen were employed upon the top of the cars or that brakemen were required to use the hand brakes to control the speed of the train; and that, for all that appears, the brakes may have been set before the cars were moved.

The error of this reasoning is apparent when we separate the averments of the complaint and answer and test those of the answer. Thus, there is an averment that the train was run when its speed was controlled by brakemen using the common hand brake for the purpose of controlling the speed. There is no attempt at denial of this allegation, except by averment that the engine was equipped with appliances for operating a train brake system, and that the cars in the train were equipped with power or train brakes, which were operated by the engineer of the locomotive drawing such train to control its speed in connection with the hand brakes. This, however, is but an admission that the speed was to an extent controlled by the brakemen using hand brakes for the purpose. Obviously, allegation of use of hand brakes

by men to control the speed in connection with the power brakes used by the engineer is not a denial of the charge that there was control of speed by the use of the hand brakes, but is rather a plea seeking to avoid liability by pleading use of dual means of control, hand brakes and power brakes.

Again, the complaint alleges that defendant required the brakemen to use the common hand brake to control the speed when the speed was not controlled by the power brakes used by the engineer of the locomotive. To this specific allegation of a requirement of use of hand brakes there is no specific denial. Nor is there a denial that the use of hand brakes to control speed was required when the speed was not controlled by the power brakes operated by the engineer of the locomotive; but, as above indicated, we find merely affirmative allegations of lawful equipment, with plea of use and operation of the two methods of breaking, the one in connection with the other. Such an answer is weighty of admission that men were required to go, and did go, on tops of the cars and between them, to use hand brakes to control the speed of the train. The denial that the act of Congress mentioned in the complaint was violated by the railway company is but a conclusion of the pleader, to be disregarded if the antecedent specific averments of the answer were not denials of the material averments of plaintiff's complaint. We think it is now clear that close inspection of the pleadings has shown that the material allegations of the complaint stand undenied; wherefore if, by authority of the decision upon the former writ of error, nothing by way of affirmative matter constituting legal defense was set forth in the answer, judgment on the pleadings was properly given. We have, then, to ascertain what was the substantive question of law decided by this court upon the former review. Upon consideration of a complaint and stipulation of fact, which presented the same issue as there is now before the court, it was said:

"Second. The act by its terms expresses with sufficient certainty the intention of Congress that hand brakes shall not be used on freight trains in the ordinary movement of such trains in' interstate commerce. By the act Congress adopted for freight trains the system of braking that was in use on passenger trains. It made no specific mention of the number of cars in a train that should be equipped with power brakes, but it enacted in general terms that the train should be sufficiently equipped to be run without requiring the use of the common hand brake. The clause 'without requiring brakemen to use the common hand brake,' as found in the first section of the act, is used in the same sense as the words 'without the necessity of men going between the ends of the cars,' in the second section, which provides for automatic couplers. The language of the act was equivalent to declaring that after the date named freight trains should not only be equipped to run, but should actually be run without requiring brakemen to use the common hand brake. No implication to the contrary is to be found in the provision in section 2 that all cars must be equipped with 'efficient hand brakes,' a provision which is ascribable to the necessity of controlling the movement of cars in yards and elsewhere, when trains have been broken up or are being made up. In an act, the express purpose of which is to relieve brakemen from the danger of using hand brakes, a provision that the train shall be so equipped as to run without requiring the use of hand brakes is a prohibition against the use of hand brakes in the ordinary movement of the trains. In view of the protection which was intended to be afforded by the act, it would have been idle for Congress to declare that freight trains must be equipped with appliances to operate a power brake system, and at the same time leave it

optional with a railroad company to decide whether it would or would not operate its trains with that system. To say that [all] trains shall be provided with power brakes, and in the same breath to say that the carrier may refuse to use them, is to contradict the very purpose and terms of the act. Yet such is the effect of the law, if it be given the construction contended for by the defendant in error."

[4] The doctrine of the decision (the case has been followed by Judge Tuttle in the District Court in the Eastern District of Michigan in United States v. Grand Rapids & Indiana R. Co., 244 Fed. 609), is that the statute is mandatory in requiring that the trains must not only be equipped to run, but must actually be run without requiring brakemen to use the hand brakes in the ordinary movement of the trains. And as there is no contention that extraordinary circumstances or exigency of train movement enter into the case under consideration, the defendant company has advanced no firm ground for holding that it is excluded from the demands of the statute as it was interpreted upon the former writ of error.

The judgment is affirmed.

ROSS, Circuit Judge. I dissent, adhering, as I do, to the views expressed by me when the case was last under consideration here. 229 Fed. 927, 931.