GRAND RAPIDS & I. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. February 16, 1918.)

No. 3059.

1. RAILROADS ⬥229—OPERATION—SAFETY APPLIANCE ACT.

The main purpose of Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (Comp. St. 1916, §§ 8605–8612), requiring the equipment of freight trains with power and train brakes, was to protect brakemen, who theretofore had been required to go on the tops of moving trains to set the hand brakes.

2. MASTER AND SERVANT ⬥142—RAILROADS—OPERATION—SAFETY APPLIANCE ACT.

In view of the purpose of the Safety Appliance Act to protect brakemen by obviating the necessity of their going on the top of trains to use hand brakes, the fact that it was necessary to manipulate levers on top of trains for retainers, which were part of the power brake mechanism, does not justify an order of the railroad company requiring freight brakemen to use hand brakes on the descent of a long grade; it appearing that the railroad company directed that all trains should be brought to a full stop before commencement of the descent of the grade, at which time the levers on the retainers could be set.

3. MASTER AND SERVANT ⬥142—RAILROADS—OPERATION—SAFETY APPLIANCE ACT.

As Hand Brake Act April 14, 1910, c. 160, § 5, 36 Stat. 298 (Comp. St. 1916, § 8622), declares that nothing therein shall be held or construed to relieve any common carrier from any of the provisions of the original

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Safety Appliance Act, as amended by Act April 1, 1896, c. 87, 29 Stat. 85, and Act March 2, 1903, c. 976, 32 Stat. 943 (Comp. St. 1916, §§ 8605–8615), the requirement that freight cars should be equipped with hand brakes does not justify railroad company in directing brakemen to use the same on the descent of a long grade.

In Error to the District Court of the United States for the Northern Division of the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action by the United States of America against the Grand Rapids & Indiana Railway Company. There was a judgment for plaintiff (244 Fed. 609), and defendant brings error. Affirmed.

James H. Campbell, of Grand Rapids, Mich., for plaintiff in error. Roscoe F. Walter, Sp. Asst. U. S. Atty., of Washington, D. C.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This is an action to recover penalties for alleged violations of the Safety Appliance Act. The controlling issue arising upon the pleadings and the evidence is whether, as respects freight trains of ten or more cars, while descending a particular grade known as Boyne Hill and upwards of eight miles in length on its main line, the railroad company could rightfully adopt and enforce a general order in terms requiring these trains to be controlled by hand brakes, and forbidding the use of air brakes unless it was evident that the trains could not be controlled by the hand brakes, or unless necessary to use the air brakes to make stops. The case was heard below upon an agreed statement of facts and certain testimony, and a directed verdict was rendered in favor of the United States. The agreed facts and the effect of the testimony, together with the charge of the trial judge, appear in 244 Fed. 609. Judgment was entered on the verdict for the amount claimed, $100, in each of five counts embraced in the declaration; and the present complaints of error relate to the rulings upon these counts.

[1, 2] We are convinced that the judgment is right, and that it is not necessary to discuss the claims of counsel, except in one respect. Counsel for the railroad urges that the contrivances, called retainers, constitute an essential part of the air brake system, that it is necessary for the brakemen to operate the retainer valves, and to do so on top of the cars in the course of their descent upon a grade, and that this presents a question which has not been considered in any reported case. The particular feature of the contention is that, since the brakemen are at such times required to go on top of the moving train, independently of any necessity arising from the use of hand brakes, there is no sufficient reason to hold, under the statutory provision requiring all cars to be equipped with efficient hand brakes, that their use was intended to be limited to the switching of cars in the yards.

It is true that the retainers are part of the air brake system. The retainer is a pipe connected with a triple valve (which, with the brake cylinder and auxiliary reservoir, is centrally located underneath the car) and extending from such valve along the bottom and the end of the car to the top, where a retaining valve with an operating lever

is mounted upon the end of the pipe; and the retention or escape of the air through the retainer may to some extent be regulated by manipulation of this lever. However, if it be assumed that testimony is admissible to question the efficiency of a statutory air brake system admittedly, as here, in good order and condition, we think it safe to say under the present record that a suitable number of these levers could be so placed when the train is at a full stop, and just before commencing to descend Boyne Hill, as to enable the locomotive engineer, while descending the hill, to control the speed of the train through the use alone of the air brake system. It is to be noted, moreover, that the general order requires "all freight trains" to "come to a dead stop just before commencing to descend Boyne Hill" (244 Fed. at page 610), and the trains here in dispute were all stopped at this point. Hence this is not a case, for instance, of a sudden failure of an air brake system to operate and the use of hand brakes to meet the resultant emergency; it is a case of deliberate substitution of hand brakes for a prescribed air brake system, founded at most on a belief of the railroad company that hand brakes are safer than the air brake system for descending the hill, and in practical effect is scarcely less than an attempt through a general railroad order to nullify the statute. It would therefore seem clear that the railroad order relied on is not sustainable upon the theory urged that the use of the retainers while descending a grade requires brakemen to go on the tops of trains.

Further, it is universally understood that the primary object of the Safety Appliance Act includes the protection of railroad employés against the old method of braking. Johnson v. Southern Pacific Co., 196 U. S. 1, 17, 19, 25 Sup. Ct. 158, 49 L. Ed. 363. This was declared as early as 1897 by the Interstate Commerce Commission (11 Ann. Rep. I. C. C. 130, 131); and in 1900, speaking of men falling from trains and of a time "when the train brake comes into general use," the Commission expressed its understanding of the act thus:

"The men will not then be obliged to use the tops of cars for braking, nor to walk on the running boards. The freight train will be as completely under the control of the engineer as passenger trains are at the present time." .13 Ann. Rep. I. C. C. 55; and see 14 Ann. Rep. I. C. C. 78, 79.

Judge Gilbert has shown that, when the safety appliance bill was pending in Congress, the House committee on interstate commerce stated in its report that the measure would "dispense with the use of men on the tops of the cars," and that the chairman of the committee having charge of the bill in the Senate explained that "the men who are on top of the cars to-day will be taken off and thereby relieved from the danger of such positions." United States v. Great Northern Ry. Co., 229 Fed. 927, 929, 144 C. C. A. 209 (C. C. A. 9). And Judge Knapp, who is possessed of special knowledge and experience as to this class of legislation, speaking for the Court of Appeals for the Fourth Circuit in Virginian Ry. Co. v. United States, 223 Fed. 748, 751, 139 C. C. A. 278, said:

"It was the evident purpose of the train brake provision to prevent the danger resulting from the operation of hand brakes on the tops of cars in moving trains. Just as the object of the automatic coupler is to keep em-

ployés from going between cars, so the object of the train brake is to keep employés from going on top of cars to set and release the hand brakes. The purpose of the law is the guide to its interpretation. * * * "

[3] In view, then, of the purpose of imposing and exacting the use of the air brake system, it cannot be that an essential portion of the system itself, like the retainers, may be employed to frustrate the act.

We, of course, have in mind counsel's view, already stated, of the provision in the act of 1910, requiring all freight cars to be equipped with efficient hand brakes; but we cannot think this provision was intended to defeat the design of the original act to release brakemen from the danger of going on the tops of trains moving upon the main lines; indeed, there is a plain inconsistency in the provisions themselves, the one exacting the air brake system and the other the hand brakes, which forbids a railroad company, upon its own idea of safe operation along its main line, to displace the air brake system in favor of the hand brake. This inconsistency is both recognized and provided for by section 5 of the Hand Brake Act (36 Stat. pt. 1, p. 299), which enacts among other things that "nothing in this act shall be held or construed to relieve any common carrier * * * from any of the provisions * * * or requirements" of the original Safety Appliance Act (27 Stat. 531), as amended by the acts of April 1, 1896 (29 Stat. 85), and March 2, 1903 (32 Stat. pt. 1, p. 943). The effect of this provision is particularly applicable to the instant case by reason of the admitted facts, before alluded to, that defendant's air brake system was "at the time in good order and repair and in efficient condition and properly connected for use." 244 Fed. 610. It must result that the requirement to equip all cars with efficient hand brakes was designed for purposes distinct from the use to which they were put in descending Boyne Hill; and it is sufficient here to say that the act concerning hand brake equipment finds abundant reason for its existence and application in places where the use of the air brake system is impracticable, as, for instance, in railroad yards. As Mr. Justice Van Devanter said when pointing out the distinction between train movements on main lines and movements in railroad yards:

"These [yard movements] are not train movements, but mere switching operations, and so are not within the air brake provision." United States v. Erie R. R., 237 U. S. 402, 408, 409, 35 Sup. Ct. 621, 624 (59 L. Ed. 1019).

And as was said in United States v. Great Northern Ry. Co., supra, 229 Fed. 930, 144 C. C. A. 209 (C. C. A. 9):

"The language of the act was equivalent to declaring that after the date named freight trains should not only be equipped to run, but should actually be run without requiring brakemen to use the common hand brake. No implication to the contrary is to be found in the provision in section 2 that all cars must be equipped with 'efficient hand brakes,' a provision which is ascribable to the necessity of controlling the movement of cars in yards and elsewhere, when trains have been broken up or are being made up."

To the same effect, United States v. Chicago, Burlington & Quincy R. R., 237 U. S. 410, 412, 35 Sup. Ct. 621, 59 L. Ed. 1019; United States v. Pere Marquette R. Co., 211 Fed. 220, 222 (D. C.).

We therefore hold that neither the retainers, nor the hand brakes, nor both, justified the order or the acts of the railroad; accordingly the judgment will be affirmed.