(No. 60067.—

RALPH DYKES, Appellant, v. NORFOLK AND WESTERN RAILWAY COMPANY, Appellee.

*Opinion filed April 19, 1985.*

Callis & Hartman, P.C., of Granite City (John T. Papa, of counsel), for appellant.

Pope & Driemeyer, of Belleville (Karl D. Dexheimer and James P. Leonard, of counsel), for appellee.

JUSTICE MILLER delivered the opinion of the court:

The plaintiff, Ralph Dykes, was injured while setting the hand brake on one of his employer's locomotives. He brought this action against the employer, Norfolk and Western Railway Company, alleging a violation of the

Safety Appliance Acts (45 U.S.C. secs. 1 through 16 (1982)), and he was awarded $18,000 in compensatory damages following a jury trial in the circuit court of Madison County. The appellate court, with one justice dissenting, reversed the judgment. (123 Ill. App. 3d 1.) The court held that locomotives are not required by the Safety Appliance Acts to be equipped with hand brakes and therefore concluded that the plaintiff's injury did not arise from a violation of the Acts. We allowed the plaintiff's petition for leave to appeal (94 Ill. 2d R. 315(a)) and now affirm the judgment of the appellate court.

The underlying facts are undisputed and may be stated briefly. On the date of the accident, March 16, 1976, the plaintiff was working as a fireman aboard a diesel/electric switch engine in the defendant's Humboldt Yard in St. Louis. At about 6:30 p.m. the plaintiff's crew finished assembling a train and returned to the yard tower; they were not pulling any cars at the time. The engineer halted the locomotive and then "lapped" the automatic brake and set the independent brake. The plaintiff attempted to set the hand brake. This was done by turning a wheel in a clockwise direction; the wheel was spoked and measured about 20 inches in diameter. As the plaintiff was tightening the brake wheel, its tension released suddenly, and the plaintiff's shoulder was wrenched. The engineer then turned on the cab lights, and the plaintiff noticed a hand-lettered sign above the brake wheel indicating that it was not working properly. The sign had been put there earlier that day, before the start of the plaintiff's shift, by a roundhouse foreman; in testing the hand brake the foreman had found that it slipped and released when more than a normal amount of force was applied to it.

At trial the plaintiff described the engine's three separate brakes and how they differ. According to this explanation, the independent brake sets brakes on the en-

gine alone and is ineffective if the engine dies; the automatic brake sets brakes on the cars in the train and, except in emergencies, is not used when the engine is standing alone; the hand brake will stay on even if the engine dies. According to one of the defendant's roundhouse foremen, both the independent brake and the hand brake should be set, as a matter of proper procedure, when an engine is standing alone.

The Safety Appliance Acts are remedial provisions intended to make the operation of trains safer, benefiting both travelers and employees. (See *United States v. Seaboard Air Line R.R. Co.* (1959), 361 U.S. 78, 4 L. Ed. 2d 25, 80 S. Ct. 12; *Johnson v. Southern Pacific Co.* (1904), 196 U.S. 1, 49 L. Ed. 363, 25 S. Ct. 158.) The hand-brake requirement at issue here is found in section 11 of the Acts (45 U.S.C. sec. 11 (1982)), which provides:

> "It shall be unlawful for any common carrier subject to the provisions of sections 11 to 16 of this title to haul, or permit to be hauled or used on its line, any car subject to the provisions of said sections not equipped with appliances provided for in said sections, to wit: All cars must be equipped with secure sill steps and efficient hand brakes; all cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards, and all cars having ladders shall also be equipped with secure handholds or grab irons on their roofs at the tops of such ladders: *Provided,* That in the loading and unloading of long commodities, requiring more than one car, the hand brakes may be omitted on all save one of the cars while they are thus combined for such purpose." (Emphasis in original.)

The Acts also provide:

> "The provisions of sections 11 to 16 of this title, as to the equipment of cars with the designated safety appliances apply to every common carrier and every vehicle subject to what are commonly known as the 'Safety Appliance Acts' set out in sections 1 to 10 of this title." 45

U.S.C. sec. 16 (1982).

Given the remedial purposes of the Acts, the plaintiff argues that the requirement of section 11 that "all cars" be equipped with hand brakes should receive a liberal construction and its protection extended to locomotives.

Engines and tenders have been found to be subject to some of the requirements of the Acts generally applicable to cars (see, *e.g., Southern Ry. Co. v. Crockett* (1914), 234 U.S. 725, 58 L. Ed. 1564, 34 S. Ct. 897 (height of drawbar on engine); *Johnson v. Southern Pacific Co.*(1904), 196 U.S. 1, 49 L. Ed. 363, 25 S. Ct. 158 (automatic couplers required between engine and car)), but not to all of them (see, *e.g., Davis v. Manry* (1925), 266 U.S. 401, 69 L. Ed. 350, 45 S. Ct. 163 (handholds not required on tender); *Pennell v. Philadelphia & Reading Ry. Co.* (1914), 231 U.S. 675, 58 L. Ed. 430, 34 S. Ct. 220 (automatic couplers not required between engine and its tender)). Thus, "a 'locomotive' and a 'car' are not the same for all the purposes of the Safety Appliance Acts." (*Lehigh Valley R.R. Co. v. Beltz* (2nd Cir. 1925), 10 F.2d 74, 76.) In each instance the inquiry depends on the source or nature of the harm to be prevented and on the utility of making the provision more broadly applicable. A governing principle was enunciated by the court in *United States v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.* (8th Cir. 1930), 43 F.2d 300, 304:

> "Locomotives and tenders are included within the term 'cars' in those cases where the statute or order of the [Interstate Commerce] Commission is such as applied to the appliance and the equipment that no sufficient practical distinction can be made between cars and locomotives. In other words, where the same reasons for requiring the installation and maintenance of the appliance on an engine or a tender exists as for requiring it on a car, and there is no separate provision with reference to the equipment required on the locomotive, then the locomotive has been construed to be a car."

Applying that test to the circumstances here, we find that brakes for locomotives are dealt with separately in the Acts and that the reasons for requiring hand brakes on cars may not apply also to locomotives. The hand-brake requirement of section 11 of the Acts is distinct from the separate, independent requirement under section 1 of the Acts that locomotives be "equipped with a power driving-wheel brake and appliances for operating the train brake system" (45 U.S.C. sec. 1 (1982)). Additionally, section 1 requires that a sufficient number of cars in a train be equipped with power or train brakes so that the engineer "can control its speed without requiring brakemen to use the common hand brake for that purpose." (45 U.S.C. sec. 1 (1982).) By administrative regulation (49 C.F.R. sec. 232.1 (1984)), at least 85% of the cars in a train must be equipped with power brakes, and under section 9 of the Acts (45 U.S.C. sec. 9 (1982)) all power-braked cars must be connected to the brake system of the train. (*United States v. Seaboard Air Line R.R. Co.* (1959), 361 U.S. 78, 4 L. Ed. 2d 25, 80 S. Ct. 12.) From these various provisions, then, it is apparent that a locomotive must have its own brakes and must also be equipped to operate and control a system of brakes for the train.

The distinction between a locomotive and a car was illustrated in *United States v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.* (8th Cir. 1930), 43 F.2d 300. There, the court held that a pusher engine, though equipped with power brakes, was not a "power braked car" within the meaning of the requirement of section 9 of the Acts that power-braked cars be connected to the train's brake system. The court noted that the pusher engine had its own brakes and that the engineer in the lead locomotive could control the train even though the pusher engine was outside the train brake system. Accord, *United States v. Chicago, St. Paul, Minneapolis &*

*Omaha Ry. Co.* (7th Cir. 1930), 41 F.2d 927.

The purpose of the hand-brake requirement was discussed in *United States v. Great Northern Ry. Co.* (9th Cir. 1916), 229 F. 927, an action by the government for penalties arising from the railroad company's use of hand brakes, in addition to the customary power brakes, to control the speeds of its trains. That use of hand brakes was implicitly prohibited, the court found, by the requirement that trains have power brakes. The court believed that the requirement of hand brakes on cars was "ascribable to the necessity of controlling the movement of cars in yards and elsewhere, when trains have been broken up or are being made up." (229 F. 927, 930.) Similarly, in *Grand Rapids & Indiana Ry. Co. v. United States* (6th Cir. 1918), 249 F. 650, a railroad company was found to be in violation of the Acts for its practice of having its trains slowed by hand brakes in descending a certain hill. The court rejected the railroad's argument that the provision requiring efficient hand brakes on all cars meant that hand brakes sometimes could be used instead of the train's power brakes. The court concluded that the provision for hand brakes did not alter the requirement that trains be equipped with and controlled by power brakes and said:

> "It must result that the requirement to equip all cars with efficient hand brakes was designed for purposes distinct from the use to which they were put in descending Boyne Hill; and it is sufficient here to say that the act concerning hand brake equipment finds abundant reason for its existence and application in places where the use of the air brake system is impracticable, as, for instance, in railroad yards." 249 F. 650, 653.

From these authorities, then, it is apparent that locomotives have their own sources of power and are equipped with their own brakes and that, in contrast, freight and passenger cars are inert and, except for sec-

tion 11, are not otherwise required by the Acts to have brakes of their own. Under the standard expressed in *United States v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.* (8th Cir. 1930), 43 F.2d 300, 304, these circumstances would indicate that locomotives are not within the requirement of section 11 that "all cars" have hand brakes.

Significant support for this conclusion is found in the administrative regulations interpreting the Safety Appliance Acts, the Railroad Safety Appliance Standards (49 C.F.R. sec. 231 (1984)). Notably, the standards require hand brakes on cars but not on locomotives. The following appears in a list of specifications applicable to all steam locomotives:

"(a) *Hand brakes.* (1) Hand brakes will not be required on locomotives nor on tenders when attached to locomotives.

(2) If tenders are detached from locomotives and used in special service, they shall be equipped with efficient hand brakes." (49 C.F.R. sec. 231.17(a).)

The standards do not contain a similar provision regarding diesel or electric locomotives. In conformity with section 11 of the Acts, the standards require hand brakes on cars; with respect to each particular type or design of railroad car, the standards specify an appropriate hand brake.

The regulations are a persuasive guide to the proper scope and meaning of the Acts. (*Davis v. Manry* (1925), 266 U.S. 401, 69 L. Ed. 350, 45 S. Ct. 163.) Although the reference in the standards to steam locomotives is not directly applicable here, the distinction drawn there, between cars and locomotives, is relevant.

We conclude that the plaintiff has failed to show that the locomotive here came within the protection of the Acts. Our result is a narrow one and necessarily is limited to the proof here. The record does not disclose the

defendant's purpose in equipping the particular engine with a hand brake or explain why setting both the independent brake and the hand brake when the engine was standing alone was proper procedure. Discussing the purpose of the hand brake, the plaintiff testified, "That's in case the engine would die, the air would leak off, you've got a brake to hold it." But there was no showing here that the hand brake was necessary for the task. We conclude that the reasons for requiring hand brakes on cars have not been shown to apply to the locomotive here, and therefore we do not extend the hand-brake requirement of section 11 to that locomotive.

Finally, we note that two decisions that the plaintiff relies on in arguing for a broad construction of the term "cars," *Baltimore & Ohio R.R. Co. v. Jackson* (1957), 353 U.S. 325, 1 L. Ed. 2d 862, 77 S. Ct. 842, and *Martin v. Johnston* (Fla. 1955), 79 So. 2d 419, are inapposite. In *Jackson* the court held that the Safety Appliance Acts came into play when a motorized track car and a hand car were connected together and operated on railroad tracks in the manner of a train. Therefore, the court applied to the motor track car the power or train brake requirement of the Acts, and applied to the hand car the automatic-coupler and hand-brake requirements of the Acts. In *Martin* the court held that a motorized track car, equipped with an inadequate hand brake and apparently no other brakes, came within the protection of the Safety Appliance Acts and was required to have an efficient hand brake; the distinction between cars and locomotives was not argued or addressed. The appellate court correctly observed that the decisions in *Jackson* and *Martin* are not inconsistent with the result reached here.

We conclude, therefore, that the plaintiff failed to demonstrate that the locomotive here came within the hand-brake requirement of section 11 of the Safety Appliance

Acts. Given that result, we need not address the additional question raised on appeal, whether the plaintiff's injury was caused by an alleged violation of the Acts or instead resulted entirely from his own carelessness.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE GOLDENHERSH, dissenting:

I dissent. As early as 1904, in *Johnson v. Southern Pacific Co.* (1904), 196 U.S. 1, 49 L. Ed. 363, 25 S. Ct. 158, the Supreme Court held that where the same reasons for requiring the installation and maintenance of a particular appliance on an engine or tender exist as for requiring it on a car, and there is no separate provision with reference to the equipment required on the locomotive or tender, a locomotive or tender will be held to be a car.

The testimony of defendant's witness, Charles Gallagher, shows that there was as much reason for equipping the locomotive with hand brakes as there was for similarly equipping any other type of car. He testified that the hand brake was to be applied when the engine was left standing alone for the reason that if the engine died the air leaked off, and the brake was needed to hold the engine. Under these circumstances, the Safety Appliance Act provision concerning hand brakes should apply to the locomotive involved in this case.

As pointed out in the dissenting opinion in the appellate court, it is obvious that the Interstate Commerce Commission has not reviewed its rule since the days when steam locomotives were prevalent, and has not considered the differences between steam- and diesel-fueled yard engines. I agree with the dissenting opinion that the circuit court correctly applied the statute in this case. I would reverse the appellate court and affirm the judgment of the circuit court.