# DAVIS, AS DIRECTOR GENERAL OF RAILROADS AND AGENT UNDER SECTION 206, TRANSPORTATION ACT, 1920, *v.* MANRY.

CERTIORARI TO THE COURT OF APPEALS OF THE STATE OF GEORGIA.

No. 147.  Submitted December 9, 1924.—Decided January 5, 1925.

The command of the Safety Appliance Act, (April 14, 1910, § 2, 36 Stat. 298) that "All cars . . . having ladders shall also be equipped with secure hand holds or grab irons on their roofs at the tops of such ladders," is inapplicable to the tender of a locomotive.  P. 404.

30 Ga. App. 213, reversed.

CERTIORARI to a judgment of the Court of Appeals of Georgia affirming a judgment recovered by Manry in an action for personal injuries.

*Mr. T. M. Cunningham, Jr.,* and *Mr. I. J. Hofmayer* for petitioner.

*Mr. Robert Douglas Feagin* for respondent.  *Mr. Walter Defore, Mr. James C. Estes* and *Mr. W. G. Martin* were also on the brief.

The term "all cars," as used in the Safety Appliance Acts, includes a locomotive and tender taken as an entity.  *Johnson* v. *Southern Pacific Co.,* 196 U. S. 1.

The top of the tender is the "roof" within the meaning of § 2.

The requirements of the Safety Appliance Acts are not satisfied by equivalents or by anything less than literal compliance with what it prescribed.  *St. Joseph, etc. Ry. Co.* v. *Moore,* 243 U. S. 311.

The acts are to be construed and applied for practical railroad purposes.  *Pennell* v. *Phila. & Read. Ry. Co.,* 231 U. S. 675; *Boehmer* v. *Pennsylvania R. R. Co.,* 252 U. S. 496.

When the Interstate Commerce Commission ordered ladders on all locomotive tenders more than forty-eight inches in height, § 2 of the Safety Appliance Act, requiring grab irons at or near the top of the ladder, became mandatory, although the order of the Commission did not prescribe a grab iron at the top of the ladder. *Illinois Cent. R. R. Co.* v. *Williams,* 242 U. S. 462.

MR. JUSTICE McKENNA delivered the opinion of the court.

Action by Manry for $50,000 against the Director General of Railroads for injuries sustained while engaged in assisting the train crew of the Central of Georgia Railroad. There was a verdict and judgment for $7,500. The judgment was affirmed on appeal by the Court of Appeals of the State. The Supreme Court of the State denied an application by the Director General for a certiorari. A petition for certiorari was granted by this Court to review the judgment of the State Court of Appeals.

The action was brought against Walker D. Hines, who at the time of the injury to Manry was Director General. He was subsequently succeeded by John B. Payne, and the latter by James C. Davis, the petitioner.

Manry alleges as a ground of action that he was employed as baggageman on a train of the railroad running between Macon, Georgia, and Montgomery, Alabama, that it became his duty to assist the crew of the engine in coaling it, that he had stepped down from the coal chute on to the tender of the locomotive and was going back to the rear of the tender to climb down the ladder there situated so that he would be in a position at the proper time and place to adjust the couplers between the tender and the train, and to see that the coupling was duly and properly made. He alleges that just as he was in the act of climbing over the rear of the tender, the engi-

neer put the locomotive in motion, and before he (Manry) could turn on the ladder and securely brace and hold himself thereon, and before he could reach his final destination, which was the ladder on the side of the tank, he was, by a sudden, unusual and unnecessary jerk, thrown to the ground and the locomotive backed over him; that while he was being dragged under the engine his legs came in contact with the wheels under the tender and both of them were mashed off at, or just below, the knee.

Negligence in operating the train is charged. Omission to equip the locomotive with the appliances required by law is also charged. To sustain the latter, it is alleged that at the rear of the tender there is a sheet-iron flange that extends up above the top thereof at an angle of about sixty degrees; the ladder on the rear of the tender does not come up and over the top of the flange, so that a person going from the top of the tender over the flange and down on the ladder has no hand-hold or other thing to securely hold himself except to clamp his hands on the sheet-iron flange.

It is contended there was a violation of § 2 of the Safety Appliance Act of April 14, 1910, 36 Stat. 298, which provides that:

" All cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards, and all cars having ladders shall also be equipped with secure hand holds or grab irons on their roofs at the tops of such ladders."

This, it is said on behalf of respondents, could easily be complied with because " The grab iron could easily be riveted on the top of the tender or on the sheet iron flange at or near the top of the ladder, and this would insure the safety of employees when using the ladder while the train is in motion, or when being put in motion, as was being done in the case at bar, and would for all practical rail-

road purposes be a compliance with the Safety Appliance Act."

The trial court charged the jury that the federal statute required that all cars having ladders should be equipped with grab irons, that this applied to a tender of a locomotive though it had no roof, and that if plaintiff's injury was due to the absence of a grab iron, he was entitled to a verdict. This was duly excepted to on the ground that the statute did not apply to ladders on a tender. The issue then was as to the effect of the statute.

The word " roofs " is the determining one. The occurring supposition is that it was used with intelligence and to accomplish its definition, its definition being the expression of its purpose, and that gets aid from the associates of the word in the section. We repeat the provision—" All cars . . . having ladders shall also be equipped with secure hand holds or grab irons on their *roofs* at the *tops* [italics ours] of such ladders." It is *cars* therefore which must have hand holds or grab irons on their roofs at the *tops* of such ladders. The section distinguishes between *roofs* and *tops,* they do not designate the same thing, and the distinction is natural. This reasoning is not giving exaggeration to verbal differences—defeating purpose. It is made necessary to accomplish the legislative purpose.

The Interstate Commerce Commission by § 3 of the act is empowered to designate the number, dimensions, location, and manner of application of the appliances provided for by § 2: The Commission's regulation as to ladders on tenders is as follows: " A suitable metal end or side-ladder shall be applied to all tanks more than 48 inches in height, measured from the top of end-sill, and securely fastened with bolts or rivets." The omission to require a grab iron is a practical construction by the Commission—the tribunal to which the application of § 2 was entrusted and which would be solicitous to enforce

it—that it applies to cars with roofs and not to tenders, they having no roofs. While the view of the Commission is not conclusive with us, it is properly persuasive. We agree with it. The trial court therefore erred in its charge on the effect of the statute and as the verdict was general with no special finding upon which the verdict could stand without response to the statute, the case must go back for a new trial.

The judgment of the Court of Appeals is therefore reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed.*