PENNELL, ADMINISTRATRIX, *v.* PHILADELPHIA & READING RAILWAY COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD ,CIRCUIT.

No. 469. Argued December 3, 1913.—Decided January 5, 1914.

*Quœre,* and not decided on this record, whether the purpose of the Safety Appliance Act is to protect all employés of every class and the mere absence of an automatic coupler is enough for liability if accident and injury result to an employé.

Under the Safety Appliance Act of March 2, 1893, c. 196, 27 Stat. 531, as amended March 2, 1903, c. 976, 32 Stat. 943, automatic couplers are not required between the locomotive and the tender.

While a custom of railroads cannot justify a violation of a mandatory statute, a custom which has the sanction of the Interstate Commerce Commission is persuasive of the meaning of that statute.

203 Fed. Rep. 681, affirmed.

THE facts, which involve the construction of the Safety Appliance Acts and their application to tenders of locomotives, are stated in the opinion.

*Mr. George Demming* for plaintiff in error.

*Mr. William Clarke Mason,* with whom *Mr. Charles Heebner* was on the brief, for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

Action for $50,000 damages brought by plaintiff in error, herein called plaintiff, against defendant in error, the Philadelphia & Reading Railway Company, herein called defendant, in the District Court of the United States, Eastern District of Pennsylvania. It was tried to a jury which, under the direction of the court, rendered a verdict for defendant. Judgment was duly entered upon the verdict and it was affirmed by the Circuit Court of Appeals.

Defendant is a common carrier engaged in interstate commerce. The intestate of plaintiff was employed by it in the capacity of fireman on one of its locomotives, and, it is alleged, came to his death by the failure of defendant to comply with the requirements of the Safety Appliance Acts of Congress and the rules and directions of the Interstate Commerce Commission formulated and proclaimed thereunder, in that defendant failed to affix between the locomotive and its tender an automatic coupling device. The action is prosecuted under the act of April 22, 1908, c. 149, 35 Stat. 65, as amended April 5, 1910, c. 143, 36 Stat. 291, relating to the liability of common carriers by railroad engaged in interstate commerce to their employés while so engaged.

The train was composed of forty-four cars, some loaded and some empty, and the engine, tender and caboose. The coupling between the cars was automatic, that between the engine and the tender was a draw-bar and pin. The pin broke in consequence of the air hose breaking or parting between the first and second cars from the caboose, thereby setting the brakes on the whole train. By the

breaking of the coupling between the tender and the engine, Pennell, plaintiff's intestate, was thrown from the train upon the track and killed on December 31, 1911. The train at the time of the accident was going about fifteen miles an hour.

The act of Congress provides (27 Stat. 531, § 2): "It shall be unlawful for any such common carrier [railroad engaged in interstate commerce] to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

The first contention of plaintiff is that the primary object of the act is, quoting from its title, "to promote the safety of employés and travelers upon railroads," and that, therefore, the language of the act "should be so applied and construed in matters relating to the protection of railroad workmen as to specific railroad accidents." In other words, the purpose of the act, it is contended, is to protect all employés, of whatever class, and the mere absence of an automatic coupler, if accident and injury result to an employé, is enough for liability. But plaintiff does not quote all of the title. The complete title is (27 Stat. 531), "An Act to promote the safety of employés and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers and continuous brakes and their locomotives with driving-wheel brakes, and for other purposes." The provisions of the act correspond to the purpose declared in the title and may be applied distributively to the protection of employé or traveler or to employés according to their employment.

But even if the act has the broad purpose asserted, which we need not decide, we are brought to the question, Is the tender of a locomotive a car within the meaning of the statute?

Plaintiff asserts the affirmative of the question and cites *Johnson* v. *Southern Pacific Co.*, 196 U. S. 1, and a number of state decisions. The case does not so decide. It does decide that the locomotive is a car within the meaning of the act. No distinction was made between it and the tender; the latter was deemed integral with the locomotive. In other words, tender and engine were considered as constituting the locomotive. Necessarily a locomotive thus constituted was decided to be a "car" within the meaning of the act and necessarily had to be coupled with the cars, which constituted the train. And in this necessity the dangers to employés would occur which the act was intended to prevent. Any other construction would have left the act denuded of some of its value. In other words, there would have been only a partial enforcement of its protection in instances where protection was oftenest needed. To omit the locomotive, composed of engine and tender—and it was considered as so composed in the cited case—was to omit part of a train which was within all the mischiefs of the act and therefore covered by its remedies. No such conditions exist in the present case. Engine and tender are a single thing; separable, it may be, but never separated in their ordinary and essential use. The connection between them, that is, between the engine and tender, it was testified, was in the nature of a permanent coupling, and it was also testified that there was practically no opening between the engine and tender, and that attached to the engine was a draw-bar which fitted in the yoke of the tender, and the pin was dropped down to connect draw-bar and yoke. The necessary deduction from this is that no dangerous position was assumed by an employé in coupling the engine and tender for the reason that the pin was dropped through the bar from the tank of the tender. The case at bar, therefore, is not brought either within the mischief or the remedy of the act.

The evidence established that it is not the custom of railroads to use an automatic coupler between the engine and tender. Some roads, however, use two additional or supplemental draw-bars, called radial bars, one on each side of the main bar, while on other roads it is almost the standard practice, instead of the supplemental bars, to use chains secured to the back heads of the locomotive and hooked to the tender on each side of the center. The record does not disclose whether there were either such bars or chains connecting the engine and tender. But even if their absence may be inferred, it is not relied on as a ground of negligence.

It is further contended by plaintiff that the necessity of an automatic coupler between engine and tender is determined by the amendment of the act of March 2, 1893, c. 196, 27 Stat. 531, enacted March 2, 1903, c. 976, 32 Stat. 943. It may be necessary, it is said, under the statute of 1893, to "bring the word 'tender' within the definition of the word 'car,'" but that this "is totally unnecessary when we come to consider and apply the subsequent statutes, because here we find the word 'tender' specifically used, and used, too, in evident contradistinction to the words 'locomotives' and 'cars.'" The amendment repeats the title of the prior acts, provides that their provisions "shall apply in *all cases*, whether or not the couplers brought together are of the same kind, make or type," and that their provisions and requirements, including automatic couplers, "shall be held to apply to all trains, locomotives, *tenders*, cars, and similar vehicles used on any railroad engaged in interstate commerce." But this act does not destroy the integrity of the locomotive and tender. It is entirely satisfied by requiring the automatic coupler between the tender and the cars constituting the train, that is, to the rear end of the tender. And this requirement fulfills the purpose of the statute, which, we have seen, does not regard the

strength of the connections between the cars, even if it may be supposed that an automatic coupler is the stronger, but does regard safety in making and unmaking the connections. This being kept in mind, the construction of the statute is not difficult. And the construction of the statute is the main concern. If it is not mandatory, as we think it is not, of an automatic coupler between the engine and the tender, the contentions of plaintiff are without foundation. We need not refer to them with further detail except to say that the custom of the railroads could not, of course, justify a violation of the statute, but that custom, having the acquiescence of the Interstate Commerce Commission, is persuasive of the meaning of the statute.

Under the various safety appliance acts the Commission is charged with the duty of prosecuting violations of them which come to its knowledge, and by the Sundry Civil Appropriation Act of June 28, 1902, c. 1301, 32 Stat. 419, 444, the Commission was authorized to employ inspectors to execute and enforce the requirements of the acts. It is of special significance, therefore, that in its order under the act of April 14, 1910, c. 160, 36 Stat. 298, which was supplemental of the other acts, designating the number, dimensions, location and manner of application of certain appliances, it provided as follows: "Couplers: Locomotives shall be equipped with automatic couplers at rear of tender and front of locomotive." That is, couplers were required where danger might be incurred by the employés.

The state decisions cited by plaintiff to sustain her definition of a car, we do not think it is necessary to review. They are all cited in *Johnson* v. *Southern Pacific Co., supra.* They applied the principle which we have applied and construed the statutes passed on according to the objects which the statutes were intended to secure.

*Judgment affirmed.*