UNITED STATES of America,
Plaintiff,

v.

SEABOARD COAST LINE RAILROAD
COMPANY, Defendant.

Civ. No. 72–212 Civ. T.

United States District Court,
M. D. Florida,
Tampa Division.

Jan. 22, 1973.

Ronald H. Watson, Asst. U. S. Atty., Tampa, Fla., for plaintiff.

Ronald D. McCall, W. Donald Cox, of Fowler, White, Gillen, Humkey, Kinney and Boggs, Tampa, Fla., for defendant.

## MEMORANDUM OPINION

KRENTZMAN, District Judge.

This is a civil non-jury proceeding, and jurisdiction has been invoked pursuant to the applicable provisions of the

Safety Appliance Acts (45 U.S.C. §§ 1–16, as amended) and also pursuant to the provisions of 28 U.S.C. §§ 1337 and 1345. Jurisdiction is not contested.

This matter comes before this Court on a motion by plaintiff for judgment in the amount of $250.00 based upon stipulation of the parties. The evidentiary facts are not in dispute. The Court has conducted a full hearing, considered the Stipulation of Facts, arguments of counsel, and the authorities cited in the briefs along with the accompanying affidavits and exhibits.

Briefly, the pertinent facts are as follows: On July 8, 1969, defendant railroad hauled or used ACL 7131 hopper car in its Train 1st Fort Meade Switcher, consisting of 64 cars including the caboose, and hauled or drawn by SCL locomotive units 1133 and 1198, on its line of railroad, over a highway of interstate commerce, from Nichols, Florida, to Fort Meade, in said State. This ACL hopper car (7131) was equipped with an ABC–1 type air brake, which is an AB type air brake. That is, it must receive periodic attention according to the provisions of 49 C.F.R. 232.17(b) and the provisions of Rule 60(a) of the Interchange Rules of the Association of American Railroads (AAR) dated January, 1969. The governing regulation (49 C.F.R. 232.17(b)) incorporates by reference the provisions of Rule 60(a) of the above-described Interchange Rules.

Said Train 1st Fort Meade Switcher originated on said date at Nichols, Florida, and received an air brake inspection and test at that point. Before its departure, the train crew inspected each of the air brakes on each of the cars in that train. In railroad parlance, they walked the train, and all of the air brakes applied and released properly.

On that date, the train passed through Mulberry, Florida, on a through main line movement without stopping. Mulberry is a repair point on the line of the Seaboard Coast Line, at which COT&S work is performed. Mulberry is located about two miles southeast of Nichols.

Car ACL 7131 was so hauled on July 8, 1969, to the Mobile Chemicals Fort Meade Mine, where it was placed for loading. It was not hauled to that point for the purposes of making repairs or of performing COT&S work on the car.

Plaintiff does not contend in this case that the air brakes on said car ACL 7131 on July 8, 1969, were inoperative or functioning improperly.

According to an Act of Congress, the parties in this case attempted in good faith to administratively settle this case pursuant to the provisions of the Federal Claims Collection Act (31 U.S.C. §§ 951–953) and the implementing Regulations (4 C.F.R. 101–105), but the parties were unable to negotiate a settlement thereunder because there was a genuine dispute of law concerning the interpretation of the applicable Regulation (49 C. F.R. 232.17(b)) and the provisions of Rule 60 of the Interchange Rules of the AAR which are incorporated by reference into the Regulation (49 C.F.R. 232.-17(b)) by its provisions, although the parties were able to administratively settle some 177 claims arising under the provisions of the Safety Appliance Acts in that claims collection action or proceeding.

The pertinent regulation, Section 232.-17(b), incorporates by reference Rule 60 of the Interchange Rules of the AAR. Rule 60 provides that freight air brake equipment must be cleaned, oiled, tested and stenciled (COT&S) after expiration of 48 months, as indicated by stenciled marking on the car. The rule also provides that the COT&S attention may be given after the expiration of 45 months when a car is on the repair track regardless of whether or not it requires other repairs. According to the regulation (Rule 60), in the case of empty cars, such cars should be shopped for periodic attention (COT&S) as soon as possible after the expiration of 45 months, in order to avoid shopping loaded cars after the expiration of 48 months.

The Government contends that it can now be determined, as a matter of law,

that after the expiration of forty-eight (48) months, freight cars with AB type air brake equipment must be shopped for the periodic attention required by the Act (45 U.S.C. § 9, as amended) and the applicable Regulation (49 C.F.R. 232.17(b)), which incorporates by reference the provisions of Rule 60 of the AAR's Interchange Rules. If the car is then hauled after the expiration of the forty-eight (48) months, and if the car has not received the required attention (COT&S), it is in violation of the authorizing Statute (45 U.S.C. § 9, as amended) and the pertinent Regulation (49 C.F.R. 232.17(b)).

According to the Government, if the freight car, after the expiration of 48 months, is out on the line of the carrier, and if, at that point, the carrier does not have the facilities to make the periodic repairs or provide the required periodic attention (COT&S), the Court should find, as a matter of law, that the carrier may legally haul the car to the nearest available point where such periodic attention could be provided. However, in this case, the defendant has stipulated that it was not hauling the car for the purpose of making any periodic repairs or providing periodic attention, but it was merely hauling the car for the purpose of loading cargo.

The controversy in this case involves the interpretation of the aforementioned statute and the regulations. The plaintiff further contends that it is entitled to judgment as a matter of law.

According to the defendant, this case should be submitted to a jury for its determination. The defendant further contends that it is a question of reasonableness.

At the hearing which was held on November 28, 1972, defendant then raised the issue of the constitutionality of the Statute and the regulations. Leave of Court was then requested to make such a plea, and it was granted. The plaintiff interposed no objection. The Court would have entertained it in any event. According to the defendant, the position of the plaintiff is simply that, in order to comply with the Act and the pertinent regulations, a railroad must test prior to the expiration of the 48 months. The railroad goes on to state that such is not the requirement of the Statute or the regulations, and that such an interpretation would render the Statute invalid.

■ Plaintiff submits that the requirements imposed by the Safety Appliance Acts and the regulations adopted pursuant thereto are absolute, and nothing less than literal compliance with their terms will suffice. This contention of the plaintiff is supported by the authorities. Chicago, Burlington and Quincy R.R. v. United States, 220 U.S. 559, 31 S.Ct. 612, 55 L.Ed. 582 (1911); O'Donnell v. Elgin, Joliet & Eastern Ry., 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1949); Southern Pacific v. United States, 23 F.2d 61 (8th Cir. 1927); United States v. Atchison, Topeka & Santa Fe Ry., 156 F.2d 457 (9th Cir. 1946); Alabama Great Southern R.R. v. United States, 233 F.2d 520 (5th Cir. 1956); United States v. Missouri-Kansas-Texas R.R., 273 F.2d 474 (10th Cir. 1959); United States v. Akron, Canton & Youngstown R. R., 397 F.2d 139 (6th Cir. 1968). Furthermore, the Safety Appliance Acts and the regulations adopted pursuant to the Acts must be liberally construed to effectuate their beneficent purpose. United States v. California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567 (1936); Lilly v. Grand Trunk Western R. R., 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411 (1943); United States v. Seaboard Air Line R. R., 361 U.S. 78, 80 S.Ct. 12, 4 L.Ed.2d 25 (1959); Carbon County Ry. v. United States, 309 F. 2d 938 (10th Cir. 1962); United States v. Southern Ry., 341 F.2d 669 (4th Cir. 1965); United States v. Akron, Canton & Youngstown R.R., 397 F.2d 139 (6th Cir. 1968).

■ We will now deal with the contentions of the defendant. In the first place, it contends that this matter should be submitted to a jury for its determination as to the question of reasonableness of the regulation. However, the

material facts are not in dispute. The defendant in this case admits moving the car, i. e., hauling or using the car on the date in question over its line of railroad, on a highway of interstate commerce, in the State of Florida. It further admits that the required attention (COT&S) had not been provided. Therefore, the question presented to this Court involves the interpretation of the regulation and is not a question of fact. It deals with a matter of law.

An analogous situation has been called to our attention. In United States v. Carbon County Ry., 199 F.Supp. 726 (D.Utah 1961), aff'd 309 F.2d 938 (10th Cir. 1962), Judge Christenson initially submitted the case to the jury over the Government's objections. On page 730 of 199 F.Supp., Judge Christenson stated as follows:

> On reflection I am convinced that in submitting the special interrogatories to the jury, and in overruling the government's objections to certain evidence, I embraced a theory inconsistent with the nature, purpose and requirement of the regulation and involved factual standards not helpful in its interpretation. The question is not whether a reasonable person would feel satisfied with a 'determination,' or whether a determination of the functioning of the brakes could be made with reasonable assurance. The question is what test is required by the regulation. The answer of the jury that the application of the brakes could be determined with reasonable assurance or reasonable certainty is not helpful because what the regulation requires involves a question of law by way of interpretation and not a finding of fact on the basis of reasonable effect or equivalence. A series of tests are required by the regu-

lations to cover various situations and to be conducted at various times. It is not contemplated that if one test is made this will obviate the requirement for other tests on the same train or the same brake system, even though one test reasonably may be indicative of the likelihood or 'certainty' that the brakes will properly operate on other occasions. The requirements for testing, by the very nature of things, must be fixed and absolute, and not dependent upon the personal ideas of crew members as to the adequacy or effect of previous tests.

This Court also believes that the reasoning employed by the Eighth Circuit in United States v. Thompson, 252 F.2d 6 (8th Cir. 1958) is properly persuasive. In that case too, there was no dispute as to the material facts. *Id.* at 7–8. At page 9, the Eighth Circuit stated as follows:

> Our conclusion is that, under the evidence, the question whether the movements in suit were train movements or were switching operations was a question of law for the court and not a question of fact for the jury, and that the court erred in denying the Government's motion for a directed verdict on the Sixth and Seventh causes of action.

Similarly, we are quite obviously dealing with an interpretation of a regulation, which is a question of law and not one of fact. Therefore, it is a matter for the Court to determine and is not one appropriately for the jury's determination.

■■ We will now deal with the defendant's contention which is that the Statute and the regulation, if applied to the movement in question, are unconstitutional.[1] Defendant so con-

---

1. For this proposition, defendant has relied on the following cases: Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285; United States v. Spector, 343 U.S. 169, 72 S.Ct. 591, 96 L.Ed. 863; United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877; United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L. Ed. 609; Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744; Kay v. United States, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607. These cases are not controlling in this case.

tends because it asserts that the regulation is vague. There is absolutely no merit in this contention. This Court finds nothing at all vague about the regulation. It merely provides that on railroad freight cars the freight air brake equipment must be cleaned, oiled, tested and stenciled (COT&S) after the expiration of 48 months, as indicated by the stenciled marking on the car. In our vague. It means exactly what it says. It is not difficult to comprehend. After the expiration of 48 months, the freight car must be shopped for the periodic attention required by the Act (45 U.S.C. § 9, as amended) and the applicable Regulation (49 C.F.R. 232.17(b)), which incorporates by reference the provisions of Rule 60 of the AAR's Interchange Rules. If the car is then hauled, after the expiration of 48 months, and if the car has not received the required attention and maintenance work (COT&S), it is in violation of the authorizing Act (45 U.S.C. § 9, as amended) and the pertinent Regulation (49 C.F.R. 232.17(b)). However, if the car, even after the expiration of 48 months, is out on the line of the carrier and if at that point the carrier does not have the facilities to make the periodic repairs or provide the periodic attention (COT&S), it may legally haul the car from that point to the nearest available point where such periodic attention can be provided. This is due to the provisions of 45 U.S.C. § 13, which provides limited relief for a carrier if it meets the rigid requirements of that section. In this particular case, however, defendant has admitted that it was not hauling the car for the purpose of making any such periodic repairs or providing such periodic attention, but was merely hauling the car for the purpose of unloading it. Therefore, that particular defense, which is provided by the provisions of 45 U.S.C. § 13, does not apply. Since the railroad has admitted in the Stipulation that it hauled the car and since it further admitted that it was not hauling it for the purposes provided in the exceptive proviso (45 U.S.C. § 13), this Court concludes that the railroad has violated the provisions of the authorizing Statute (45 U.S.C. § 9, as amended) and the governing Regulations (49 C.F.R. 232.17(b); Rule 60 of the AAR's Interchange Rules). The Court in arriving at its determination has also relied on the reasoning employed by the Tenth Circuit in Carbon County Ry. v. United States, 309 F.2d 938, 943 (10th Cir. 1962), affirming 199 F.Supp. 726 (D.Utah 1961).

The regulation in question (Rule 60) has a built-in safety valve. The carriers are admonished to perform the required periodic attention and maintenance work after the expiration of 45 months so that it will be unnecessary to shop the car after the expiration of the 48th month. This language too supports the contention of the plaintiff in this case, not defendant. The carrier may shop a car, according to the very wording of the regulation, whether or not a car needs repairs and collect from the owning line for so doing. All of this militates against the position of the defendant in this case. Since the requirements imposed by the Safety Appliance Acts are absolute, and since the wording of the pertinent regulation is plain and unambiguous, the carrier must perform the required maintenance and periodical repair work (COT&S) immediately after the expiration of the 48th month as indicated by the standard stenciled marking on the car, which is a day certain. It is not at all difficult to comprehend, and apparently the carriers have had no great difficulty with it. Thus, immediately after the 48 months have expired, the carrier must perform the required periodical repairs. Railroad personnel simply look at the standard stenciling marks on the car, and they can make a determination from that. Certain types of air brake tests are required in any event and are performed at regular intervals. For example, Carbon County Ry. v. United States, 309 F.2d 938 (10th Cir. 1962), affirming 199 F.Supp. 726 (D.Utah 1961); United States v. Terminal Railroad Assn. of St. Louis, 397 F.2d

467 (7th Cir. 1968). See also 49 C.F.R. 232.10–232.17, inclusive. Due to the absolute requirements of these Acts, the carrier must immediately perform the required periodical attention after the expiration of the 48th month from the day it was last so stenciled and marked. Therefore, this would mean one minute past midnight. If the railroad exercises prudence, it will make such periodical repairs within the three-month period prior to that date, i. e., the 48th month. In other words, it will make such periodical repairs some time after 45 months have expired and before 48 months have, as indicated by the standard stenciled markings on the car.

The regulation involved in this case is one promulgated pursuant to the Act (45 U.S.C. § 9, as amended) of the Safety Appliance Acts and is incorporated in those Acts by reference. In other words, Congress specifically adopted these provisions into the very Act itself. Congress specifically directed the Commission (ICC) to adopt the rules, standards and instructions of the Association of American Railroads (AAR), when it amended Section 9 in 1958. The rules then adopted by the Commission pursuant to this Congressional direction were the railroads' own. 2 U.S.Code Cong. & Admin.News pp. 2343–2344 (85th Cong., 2d Sess. 1958). Previously, this set of rules was a voluntary system operated by the railroads. It evidently failed because the railroads did not comply with their own set of rules. *Id.* at 2344. Evidently, the railroads were either unable to enforce their own rules or were deliberately ignoring these minimum requirements for safety. 104 Cong.Rec. 6132, 6136 (1958); 2 U.S.Code Cong. & Admin. News pp. 2343, 2344 (85th Cong., 2d Sess. 1958). The Commission at that time, therefore, believed it was necessary for the carriers' own rules to be enforced. *Ibid.* Congress agreed and passed this bill. The regulation at issue in this case (49 C.F.R. 232.17(b); Rules 60) was one of those AAR rules adopted by the Commission pursuant to the specific Congressional direction. However, when the Department of Transportation was created, these safety functions were transferred from the Commission to the Federal Railroad Administration (FRA) within the said Department, and the FRA now administers and enforces these important safety provisions. 49 U.S.C. § 1655(e), (f)(3)(A).

■ A regulation which provides for periodic attention and repairs every four years is certainly a reasonable one. It is certainly consistent with the purpose of the Safety Appliance Acts, which is the promotion of railroad safety. Certainly, such a regulation is in the interest of safety and promotes it. For example, United States v. Toledo, Peoria & Western R.R., 280 F.Supp. 243, 251–252 (N.D.Ind.1968). However, it is not for this Court to determine whether or not a particular safety measure is needed since that is the particular province of Congress. United States v. Seaboard Air Line R.R., 361 U.S. 78, 82, 80 S.Ct. 12, 4 L.Ed.2d 25 (1959); United States v. Toledo, Peoria & Western R.R., *Id.*, 280 F.Supp. at 252.

■ It is conceded that the train in question on July 8, 1969, received a proper initial air brake inspection at Nichols, Florida, where the train originated, and it is also conceded that on July 8, 1969, the air brakes on the car in question, ACL 7131, were operating and functioning properly. However, all of that is immaterial as far as this case is concerned. The carrier was not charged with violating any of those provisions, but it was charged for failure to make the required periodical repairs (COT&S) pursuant to 45 U.S.C. § 9, as amended, and 49 C.F.R. 232.17(b), which incorporates by reference the provisions of Rule 60 of the AAR's Interchange Rules. That is the gist of the offense. The railroad must comply with each and every one of the power-brake regulations (49 C.F.R. 232.10–232.17, inclusive), and this is an absolute duty.[2]

2. See cases cited on page 1082 also.

United States v. Akron, Canton & Youngstown R.R., 397 F.2d 139, 140–141 (6th Cir. 1968); United States v. Carbon County Ry., 199 F.Supp. 726, 729–730 (D.Utah 1961), affirmed 309 F.2d 938 (10th Cir. 1962).

According to the contentions of the defendant, plaintiff has alleged that the required periodical attention (COT&S) must be performed *before* the expiration of the 48 months. Plaintiff has never made any such contention in its oral argument or in any of the written documents submitted to this Court. Plaintiff has always contended that, since the requirements imposed by the Safety Appliance Acts and the governing regulations are absolute and since the regulation involved is plain and unambiguous on its face, the periodical attention and maintenance work must be performed *after* the expiration of the 48 months, as indicated by the standard stenciled markings on the car. As has been previously indicated herein, the Court agrees with plaintiff.

 There is another compelling principle which applies in this case. The interpretation of a regulation by the agency or department that administers it is properly persuasive and is entitled to great weight because such agency or department is clothed with the legal power of interpreting its own rules and regulations and any phrases contained therein. Davis v. Manry, 266 U.S. 401, 405, 45 S.Ct. 163, 69 L.Ed. 350 (1925); Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 325, 53 S.Ct. 350, 77 L.Ed. 796 (1933); Baltimore and Ohio R.R. v. Jackson, 353 U.S. 325, 77 S.Ct. 842, 1 L.Ed.2d 862 (1957); United States v. American Trucking Assn's, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). From 1958 until the present time, the ICC previously, and now the FRA, has been administering and enforcing this very regulation under the very theory or posture which the Government is assuming in this case. In addition, no rail carrier has seriously contested the validity of that theory and has admitted in some of the claims collection cases, which were administratively handled pursuant to the Federal Claims Collection Act and the implementing regulations previously cited herein, that hauling a car with an old air date is a violation. In fact, most of the carriers acquiesced in this theory and paid the penalties for violating this very regulation. Furthermore, the AAR seems to be in perfect accord with the theory which the Government has adopted here. Plaintiff's Exhibit E is illustrative. It is a copy of a memorandum of the AAR dated September 1, 1970, prepared by Executive Vice Chairman F. A. Danahy who is one of the officers of the AAR's Mechanical Division. This document, properly verified, states at paragraph two of this one-page document as follows: "The above extension does not apply to equipment not having both portions of the control valve of the ABD type. Freight car brake equipment having control valves other than complete ABD type will be due for COT&S periodic attention on the same basis as AB equipment, which is in violation of requirements on the expiration of fourty-eight (48) months in service." All of this is consistent with the position which the Government has taken in this case.

This Court finds for the plaintiff and will enter judgment for plaintiff in the sum of $250.00. This memorandum contains the Court's Findings of Fact and Conclusions of Law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.