RALPH DYKES, Plaintiff-Appellee, *v.* NORFOLK AND WESTERN RAIL-WAY COMPANY, Defendant-Appellant.

Fifth District   No. 83—129

Opinion filed March 23, 1984.

WELCH, P.J., dissenting.

Pope and Driemeyer, of Belleville (Karl D. Dexheimer and James P. Leonard, of counsel), for appellant.

Callis & Hartman, P.C., of Granite City (John T. Papa, of counsel), for appellee.

JUSTICE JONES delivered the opinion of the court:

Plaintiff, Ralph Dykes, brought this action to recover damages from the defendant, Norfolk and Western Railway Company, for injury resulting to him from an alleged violation of the Federal Safety Appliance Act (Act) (45 U.S.C. sec. 1 *et seq.* (1970)). The plaintiff, who was injured when he attempted to set a hand brake on a locomotive engine upon which he was working, alleged that the hand brake was defective and that this defect constituted a violation of the Act. Following a jury trial, the trial court entered judgment on the jury's verdict for the plaintiff in the amount of $18,000. On appeal from this judgment, the defendant contends that the alleged defect did not, as a matter of law, constitute a violation of the Act because the Act does not require hand brakes on locomotives. We agree and accordingly reverse the judgment entered by the trial court.

The plaintiff was employed at the time of his injury as a fireman in the defendant's Humboldt Yard in St. Louis, Missouri. As such he worked aboard a switch or yard engine, used locally to move cars from one track to another in making up trains.

On the date in question the plaintiff and his crew were assigned to engine No. 3370, a diesel-electric switch engine, to perform switching operations in the yard. In addition to the hand brake here at issue, engine No. 3370 was equipped with both an independent brake and an automatic brake. The independent brake was used to set the brakes on the engine alone, while the automatic brake was used to stop the train by setting air on the cars in the train. In addition, the hand brake could be set to hold the engine in case the engine died and the air leaked from the independent brake.

The plaintiff's injury occurred after the plaintiff and his crew had completed their first switching assignment of the day and had proceeded to the yard tower to take a break. Upon reaching the tower, the engineer in charge isolated the engine, which involved setting both the independent brake and the automatic brake. The plaintiff, as fireman, was to set the hand brake on the engine. He took the wheel of the hand brake and pulled it toward him to turn the wheel. When the plaintiff pulled hard on the wheel to tighten it, the wheel released, causing the plaintiff to fall back and pull his shoulder.

The plaintiff brought suit against the defendant, alleging in a one-count complaint a violation of the Act that proximately caused his injury. At trial the defendant moved for a directed verdict on the grounds that the allegedly defective hand brake could not have constituted a violation of the Act because the Act does not require hand brakes on locomotives. The motion was denied, and the jury returned a verdict for the plaintiff, assessing damages in the amount of $18,000. The defendant has appealed from the judgment entered on the verdict.

On appeal the defendant contends that the hand brake requirement of the Act, properly construed, does not extend to locomotives such as that here at issue. In its argument the defendant relies upon the history and purpose of the Act as well as upon case law interpreting similar provisions of the Act. In addition the defendant cites a long-standing administrative rule that expressly provides that hand brakes are not required on locomotives.

The hand brake requirement of the Act is set forth in section 11 (45 U.S.C. sec. 11 (1970)), which provides in pertinent part:

"It shall be unlawful for any common carrier subject to the provisions of sections 11 to 16 of this title to haul, or permit to be hauled or used on its line, any car subject to the provisions of said sections not equipped with appliances provided for in said sections, to wit: All cars must be equipped with secure sill steps and efficient hand brakes[:] *** *Provided,* That in the loading and hauling of long commodities, requiring more than one car, the hand brakes may be omitted on all save one of the cars while they are thus combined for such purposes."

Under this section efficient hand brakes are required on "all cars." Thus, in the instant case the defendant's liability for a violation of the Act depends upon whether a switch engine is a "car" for purposes of the hand brake requirement of the Act.

While the plaintiff contends that the word "car" should be construed broadly to include locomotives within the requirement of

this section, it is well settled that a locomotive is not considered to be a car for all purposes under the Act. (*Wabash R. Co. v. United States* (7th Cir. 1909), 172 F. 864; *LeHigh Valley R. Co. v. Beltz* (2d Cir. 1925), 10 F.2d 74, *cert. denied* (1926), 270 U.S. 641, 70 L. Ed. 775, 46 S. Ct. 205; *United States v. Chicago, St. P., M. & O. Ry. Co.* (7th Cir. 1930), 41 F.2d 927; see *Davis v. Manry* (1925), 266 U.S. 401, 69 L. Ed. 350, 45 S. Ct. 163; Annot., 91 A.L.R.2d 523 (1963).) Rather, the determination of whether a locomotive comes within the scope of a specific section of the Act regarding cars has been held to depend upon both the context and purpose of the provision in question. Thus, as a general rule, a locomotive will be held to be a car within meaning of a particular section when the same reason exists for requiring the installation and maintenance of the prescribed safety device on the locomotive as exists for requiring it on a car. Annot., 91 A.L.R.2d 523 (1963); *United States v. Chicago, St. P., M. & O. Ry. Co.* (8th Cir. 1930), 43 F.2d 300.

In *Johnson v. Southern Pacific Co.* (1904), 196 U.S. 1, 49 L. Ed. 363, 25 S. Ct. 158, decided shortly after the enactment of the Safety Appliance Act in 1893, the court ruled that for purposes of the automatic coupler provision of the Act (see 45 U.S.C. sec. 2 (1970)), the word "car" was used in its generic sense to mean all kinds of cars running on the rails, including locomotives. The court noted that

> "it was as necessary for the safety of employes [*sic*] in coupling and uncoupling, that locomotives should be equipped with automatic couplers, as it was that freight and passenger and dining cars should be, perhaps more so, *** 'since engines have occasion to make couplings more frequently.' " (*Johnson v. Southern Pacific Co.* (1904), 196 U.S. 1, 15, 49 L. Ed. 363, 368, 25 S. Ct. 158, 161.)

Since, in view of the "context, subject matter and object" (196 U.S. 1, 16, 49 L. Ed. 363, 369, 25 S. Ct. 158, 161) of the automatic coupler provision, there was no reason to distinguish between locomotives and other cars, locomotives were held to be cars within the meaning of that section.

In 1903 the Act was amended by section 8 (45 U.S.C. sec. 8 (1970)) to expressly extend the provisions of sections 1 through 7 to "all trains, locomotives, tenders, cars, and similar vehicles ***." The courts, however, continued to look to the danger to be avoided by the requirement of a particular safety device in determining whether a vehicle was to be considered a car for purposes of that requirement.

The court in *Wabash R. Co. v. United States* rejected the conten-

tion that "a locomotive and a car are synonymous terms in every respect and for every purpose" (172 F.2d 864, 865), holding that a locomotive engine was not required, under the provision that all cars be equipped with couplers, to have couplers at both ends. Citing *Johnson*, the court stated:

"[T]he primary object of the act was to promote the public welfare by securing the safety of employees and travelers. Its design to give relief was more dominant than to inflict punishment—a view of the statute that is wholly irreconcilable with a construction that would require the designated couplers to be placed where they were never used or intended to be used." 172 F.2d 864, 865.

Similarly, in *Pennell v. Philadelphia & Reading Ry. Co.* (1914), 231 U.S. 675, 58 L. Ed. 430, 34 S. Ct. 220, the Supreme Court looked to the purpose of the Act in holding that an automatic coupler was not needed between an engine and its tender. The court there noted that, in *Johnson*, a locomotive was held to be a car within the meaning of the automatic coupler provision because of the necessity of coupling an engine to a train, "[a]nd in this necessity the dangers to employees would occur which the act was intended to prevent." (231 U.S. 675, 678, 58 L. Ed. 430, 433, 34 S. Ct. 220, 221.) While, in *Johnson*, "[t]o omit the locomotive [from coverage of the Act] *** was to omit part of a train which was within all the mischiefs of the act, and therefore covered by its remedies" (231 U.S. 675, 678, 58 L. Ed. 430, 433, 34 S. Ct. 220, 221), no such conditions existed in the case under consideration. Rather, in *Pennell*, no dangerous position was assumed by an employee in coupling the engine and tender and, therefore, the case "[was] not brought either within the mischief or the remedy of the act." (231 U.S. 675, 678, 58 L. Ed. 430, 433, 34 S. Ct. 220, 221.) *Cf. Southern Ry. Co. v. Crockett* (1914), 234 U.S. 725, 58 L. Ed. 1564, 34 S. Ct. 897 (locomotive held to come within height requirement for drawbars of freight cars where both vehicles were used together and there was as much reason for having drawbars of locomotives adjusted to standard height as there was for freight cars); *Davis v. Manry* (1925), 266 U.S. 401, 69 L. Ed. 350, 45 S. Ct. 163 (tender of locomotive not a car for purposes of handhold requirement for cars).

In 1910 the Act was further amended by the addition of sections 11 through 16 (45 U.S.C. secs. 11-16 (1970)), which, by the terms of section 16, were to apply to the same vehicles as did the existing sections of the Act. Thus, the "any car" language of section 11, the hand brake requirement here at issue, is to be interpreted in accord

with the tests set forth for other safety appliances prescribed by the Act.

. .While we are aware of no case that specifically addresses the issue of the applicability of the hand brake requirement to locomotives, we may obtain guidance on this question from a line of cases in which the rationale of the *Johnson* and *Pennell* decisions was reiterated and applied with regard to the power brake requirement for cars. At issue in these cases, *United States v. Chicago, St. P., M. & O. Ry. Co.* (7th Cir. 1930), 41 F.2d 927, *aff'g* (W.D. Wis. 1929), 42 F.2d 248, and *United States v. Chicago, St. P., M. & O. Ry. Co.* (8th Cir. 1930), 43 F.2d 300, *aff'g* (D.C. Minn. 1929), 34 F.2d 812, was whether a pusher engine coupled to the rear of a train to assist the head engine in pulling the train upgrade was a car for purposes of the power or train brake requirement of the Act (see 45 U.S.C. secs. 1, 9 (1970)). Under the pertinent provisions, a percentage of the cars of a train were to be equipped with power brakes controlled by the engineer of the head locomotive. In each case the pusher engine in question was equipped with a separate power driving-wheel brake required for locomotives but was not connected to the power brake system of the train. The courts in each case held, upon consideration of the context and purpose of the applicable provisions, that the pusher engine was not a car for purposes of the power brake requirement of the Act.

In so holding, the Eighth Circuit Court of Appeals distinguished the *Johnson* case on its facts, noting that while the Act made separate provisions regarding brake requirements for cars and locomotives,

> "[the] act, in so far as it referred to couplers, did not name locomotives separately from cars, and unless automatic couplers were required on locomotives by reason of their inclusion in 'any car,' they were not required at all. *** As to automatic couplers, there was just as great necessity [*sic*] for having them on locomotives as on cars, but as locomotives are equipped with their own air brakes, and with men on the engine to operate them, there would seem to be reason for treating them as separate and independent from 'power brake cars.' " (43 F.2d 300, 303.)

The court observed:

> "While the Supreme Court in the *Johnson* case held that a locomotive engine was a car within the meaning of the automatic coupler provision of the Safety Appliance Act, and in *Southern Ry. Co. v. Crockett* *** held that a locomotive was a

car within the draw bar provisions of the act, *** these provisions, one requiring the installation and use of automatic couplers, and the other fixing and requiring the use of draw bars of standard height, were, from a practical standpoint, as necessary on locomotives as on cars, and the Safety Appliance Act did not speak separately of locomotives in prescribing couplers nor the height of drawbars, as it does in regulating the subject of train brakes." 43 F.2d 300, 303.

The court then set forth a test for determining whether a locomotive is a car for purposes of a particular safety appliance:

"Locomotives and tenders are included within the term 'cars' in those cases where the statute or order of the Commission is such as applied to the appliance and the equipment that no sufficient practical distinction can be made between cars and locomotives. In other words, where the same reasons for requiring the installation and maintenance of the appliance on an engine or a tender exists as for requiring it on a car, and there is no separate provision with reference to the equipment required on the locomotive, then the locomotive has been construed to be a car." 43 F.2d 300, 304.

■■ Applying this test to the instant case, we believe there are sufficient differences between the brake requirements for cars and locomotives that locomotives do not come within the hand brake requirement of section 11. As the *United States v. Chicago, St. P., M. & O. Ry. Co.* cases demonstrate, the Act makes separate provisions for cars and locomotives with regard to the power brake requirements of section 1. Under this section a locomotive is required to be equipped with an independent power brake in addition to a brake for controlling the train's power brake system. While hand brakes would be necessary on cars in situations where the cars were unconnected with the power brake system of the train (see *Grand Rapids & Indiana Ry. Co. v. United States* (6th Cir. 1918), 249 F. 650), no such necessity exists for a locomotive equipped with its own independent power brake. Because of this difference in brake requirements for cars and locomotives, locomotives cannot be said to be cars for purposes of the hand brake requirement under the "same reason" test set forth by the courts.

Our determination in this regard is buttressed by a rule of the Interstate Commerce Commission that expressly states:

"Hand brakes will not be required on locomotives nor on tenders when attached to locomotives." (49 C.F.R. sec. 231.17(a).)

This rule, promulgated pursuant to statute, embodies the interpretation of the agency charged with administering the Act and, as such, is entitled to great weight. (*United States v. Chicago, St. P., M. & O. Ry. Co.* (8th Cir. 1930), 43 F.2d 300; see *United States v. Seaboard Coast Line R.R. Co.* (M.D. Fla. 1973), 368 F. Supp. 1079.) This rule was adopted by order of the Commission in 1911, contemporaneously with section 11 here at issue, and thus represents long administrative practice to be considered in the construction of the statute. (*Baltimore & Ohio Ry. Co. v. Jackson* (1957), 353 U.S. 325, 1 L. Ed. 2d 862, 77 S. Ct. 842; *Davis v. Manry*.) As stated by the court in *United States v. Chicago, St. P., M. & O. Ry. Co.* (8th Cir. 1930), 43 F.2d 300, 305-06:

> "If the meaning of [the] statute were in doubt, the practical construction given it through all these years should be presumed to be the correct one, and this is particularly true where there has been a contemporaneous construction of the statute by those charged with its execution and application. We should be reluctant to overturn a long standing departmental construction, presumably known to the legislative department which has made no amendments to the act, seeking to make it applicable to the practice now challenged ***."

We find no basis for the plaintiff's assertion on appeal that the court's decision in *Baltimore & Ohio Ry. Co. v. Jackson* is controlling of the result here. Both that case and *Martin v. Johnston* (Fla. 1955), 79 So. 2d 419, also cited by the plaintiff, were concerned with whether certain maintenance-of-way vehicles used upon the railroad came within coverage of the Act at all, while, in the instant case, that issue is determined by the express provision of section 8 making the Act applicable to locomotives. Thus, the courts' holdings in those cases that the vehicles in question were sufficiently akin to "cars" and "locomotives" to be covered by the Act are inapposite to the question of the requirements of a specific section at issue in the instant case. Moreover, insofar as those cases dealt with specific appliances required under the Act, they are not inconsistent with the result we have reached here. Cf. *Baltimore & Ohio Ry. Co. v. Jackson* (motor track car used like a locomotive required to be equipped with power brake); *Martin v. Johnston* (motorized track car came within requirement of efficient hand brake where equipped with no other brake).

We note finally that since the plaintiff's action here was based solely upon the defendant's alleged violation of the Act, the plaintiff could recover only if the defect complained of constituted

such a violation. The plaintiff has failed to show that locomotives are required under the Act to be equipped with hand brakes and cannot, therefore, succeed on this theory. While it may be significant in another case based on negligence that the defendant had installed a hand brake on its locomotive and had a rule regarding its use as an additional safety measure, these facts have no bearing in this action premised upon a statutory violation.

Because we have found as a matter of law that the defendant's acts did not constitute a statutory violation, it is unnecessary to address the additional question raised by the defendant of whether the defect complained of was a proximate cause of the plaintiff's injury.

For the reasons stated in this opinion, we reverse the judgment of the circuit court of Madison County.

Reversed.

KARNS, J., concurs.

WELCH, P.J., dissenting:

The majority is correct in observing that whether a yard engine is covered by the hand brake provisions of section 11 of the Federal Safety Appliance Act depends on whether the same reason exists for requiring the brake on the engine as exists for requiring it on a car. However, I believe that the evidence presented at trial shows that the hand brake is as necessary on that engine as it is on a railroad car, and I must respectfully dissent from the majority's conclusions to the contrary.

The purpose of the hand brake on railroad cars is to prevent them from rolling when not attached to the automatic braking system of a train. The hand brake thus ensures that a car will at no time be left without a working brake system. The same function, in my judgment, is served by the hand brake on a yard engine.

Defense witness Charles Gallagher, roundhouse foreman for the defendant, testified that it was the accepted procedure at the defendant's yard to apply the hand brake when an engine was parked and left standing alone. The reason for this practice is, as the plaintiff explained, "in case the engine would die, the air would leak off, you've got a brake to hold it." This is especially important in the case of yard engines, which are often parked on grade and left unattended in areas densely populated by workers. It is reasonable to conclude that the considerations behind this safety procedure at

defendant's yard also justify applying the Safety Appliance Act's hand brake requirement to engines which are used in railroad yards.

This position is further supported by *Martin v. Johnston* (Fla. 1955), 79 So. 2d 419. Although the primary question in *Martin* was whether a maintenance-of-way vehicle is covered by the Act in general, the result in *Martin* was to require hand brakes on that car, which, like a yard engine, is often stopped and left standing alone. *Martin* thus stands for the principle that a railroad vehicle which is governed by the Safety Appliance Act and frequently remains unattached and unattended must not be left without a functioning brake system at any time. Nothing cited in the majority's opinion repudiates this as a goal of the Act. The *United States v. Chicago, St. P., M. & O. Ry. Co.* cases are distinguishable because they involved pusher engines on main lines, and because the hand brake provisions of the Act were not specifically discussed.

Nor am I persuaded that the quoted rule of the Interstate Commerce Commission dictates reversal of the judgment. Such an administrative construction of a statute is not to be accorded great weight if it is apparent that the agency did not consider the specific problem at hand. (*Baltimore & Ohio Ry. Co. v. Jackson* (1957), 353 U.S. 325, 330-31, 1 L. Ed. 2d 862, 867, 77 S. Ct. 842, 846.) The presence of the word "tender" in the rule suggests that the Commission was considering coal fired steam locomotives when it adopted the rule in 1911, and has not reviewed its applicability for some time. Steam locomotives would seem to be appreciably less likely than diesel-electric engines to roll when left unattended without brakes, and had the Commission expressly addressed the problems of diesel-electric yard engines, it may well have required hand brakes on them. The difference between those two forms of propulsion is an additional cause to discount the probative value of the *United States v. Chicago, St. P., M. & O. Ry. Co.* cases here.

For these reasons, I would agree with the trial court that the hand brake requirement of section 11 should apply to yard engines such as engine No. 3370.